Henry & Coatsworth Co. v. Fisherdick.

HENRY & COATSWORTH COMPANY, APPELLEE, V. CY-
RUS W. FISHERDICK, ADMINISTRATOR OF THE ES-
TATE OF M. ISABEL BOND, DECEASED, ET AL.,
APPELLEES, IMPLEADED WITH CHARLES H. BRALEY
ET AL., APPELLANTS.

FILED JUNE 6, 1893.   No. 5189.

1. **Mortgages**: RELEASE WITHOUT PAYMENT AT REQUEST OF
   MECHANICS' LIENHOLDERS: PRIORITIES: ESTOPPEL. M. held
   a mortgage on certain city lots, on which the owner desired to
   negotiate a large loan for the purpose of building thereon a
   hotel, contracts for furnishing the material for which were held
   by H. & C., who promised M. in writing if he would release his
   mortgage they would pay him the amount thereof out of the
   payments made to them for material from time to time as the
   building progressed. M. released. Payments for material
   were made to H. & C., but they paid nothing to M. In a suit by
   H. & C. to foreclose mechanics' liens on the lots and hotel,
   *held*, that the release by M. of his mortgage was a sufficient
   consideration for the promises of H. & C.; that they were
   estopped from claiming liens on the property prior to M., and
   that their liens should be charged with the amount due M. on
   his mortgage.

2. **Mechanics' Liens**: PRIORITIES. Under the law of this state
   the lien of a mechanic or laborer attaches at the commencement
   of the furnishing of material, or at the commencement of the
   performance of labor by him, and not from the beginning of the
   construction of the improvement on which he labors or for
   which he furnishes material.

3. ――――: ――――: INTEREST TO WHICH LIEN ATTACHES. A per-
   son commencing to furnish material for, or commencing to labor
   on, an improvement on real estate must at the time take notice
   of the interest and title in the premises of the person with
   whom he contracted, as shown by the public records, as his lien
   for labor or material, aside from the improvement itself, attaches
   only to such interest.

4. **Mortgages**: MECHANICS' LIENS: PRIORITIES. A party taking
   a mortgage on real estate is bound, at the time, to know whether
   material has been furnished or labor performed in the erection,

reparation, or removal of improvements on the premises within the four prior months.

5. ——: ——: ——. The lien of a mortgage on real estate, taken while a building is in process of erection thereon, is subject to the claims of material-men and laborers for material already and thereafter furnished, and for labor already and thereafter performed in the erection of such building, when the commencement of such furnishing of material, or the commencement of the performance of such labor, was prior to the record of said mortgage.

6. Mechanics' Liens: INTERVENING MORTGAGES: PRIORITIES: CLASSIFICATION OF LIENS. Under the Nebraska statute there are no priorities amongst liens for material furnished or labor performed; but this rule of equality applies only to those lienors who commenced the furnishing of material, or commenced the performance of labor on the faith of the same estate; as, if A, B, and C commence the furnishing of material for an improvement on certain real estate, and afterwards the owner mortgages to D, and thereafter E, F, and G commence the performance of labor on the improvement; here the liens of A, B, and C are prior to D's mortgage and prorate amongst themselves, being of the same class and attaching to the same estate; while the liens of E, F, and G would be subject to D's mortgage but would prorate amongst themselves, being of the same class and attaching to the same estate.

7. ——: PROCEEDINGS TO PERFECT: AFFIDAVIT. The oath attached to the "account of the items" for material furnished and for which a lien was claimed, was as follows: "J. A. B., being first duly sworn, * * * says, * * * is a * * * correct * * * of material furnished by this affiant. * * * Signed, Capital City Planing Mills, per J. A. B., Sec'y." The account of the items was headed, "M. I. B., To Capital City Planing Mills, Dr." *Held*, To show that the lien was claimed by the Capital City Planing Mills and not by J. A. B., and a substantial compliance with the statute.

8. ——: ——: ——. The oath required by section 3, chapter 54, Compiled Statutes, may be made by the agent of the claimant of a lien, whether a person or corporation.

9. ——: ——: LIMITATION: EVIDENCE. When more than four months intervene between items of an account for material furnished a mechanic's lien will not attach for the items preceding the hiatus, unless it is made to appear by competent evidence that all the items were furnished pursuant to one contract; and

the affidavit attached to the "account of the items" is not competent evidence to prove that fact.

10. ——: MATERIAL-MAN'S RIGHT TO LIEN: CONDITIONS OF SALE CONTRACT: WAIVER. A vendor of an elevator, furnished for and put up in a hotel in process of erection, by contract with the owner retained in himself the title until the fixture should be paid for, and reserved the right to retake possession thereof if default should be made in the payment for the same. *Held*, Not a waiver of the vendor's right to a material-man's lien on the hotel and the land occupied by it.

11. ——: ASSIGNMENT: TAKING MORTGAGE SECURITY: MERGER. The assignee of a mechanic's lien is subrogated to all the rights of his assignor; and the taking of a mortgage by the assignee on the property affected by the lien, the consideration of which mortgage was used in the purchase of the lien, will not merge the latter in the mortgage, unless it appears such was the intention of the parties and justice requires it. That intention may be established not only from the acts and declarations of the assignee but from a view of the situation as affecting his interests.

12. **Indemnity Bond**: PRINCIPAL AND SURETY: RIGHTS OF SURETY: UNAUTHORIZED DELIVERY: RATIFICATION. The agent of the obligee in an indemnity bond against mechanics' liens presented the obligation to H. and D. and requested them to sign it as sureties; promising them that A., S., and one Hughes, whose names were printed in the body of the bond as sureties, would also sign it. H. and D. signed on the agreement with the agent that if the others named as sureties did not sign, the bond should be "invalid." None of the others named as sureties signed, and the agent, without the knowledge of H. or D., erased the other sureties' names by drawing an ink line across them and delivered the bond in this condition to her principal. *Held*, The delivery of the bond was unauthorized and H. and D. were not liable thereon; *and held further*, that H. and D., by afterwards taking security to protect themselves from loss (being then ignorant of the fact that the other sureties had not signed), did not thereby ratify the delivery of the bond, as the knowledge of the existence of a right or defense and the intention to relinquish it must concur in order to estop a party by waiver.

APPEAL from the district court of Lancaster county. Heard below before FIELD, J.

*Trimble & Braley, E. E. Brown, Robert Ryan,* and *Marquett, Deweese & Hall,* for appellants.

*Samuel J. Tuttle, Holmes, Cornish & Lamb, Talbot & Bryan, Webster, Rose & Fisherdick, F. I. Foss, A. G. Wolfenbarger, Clark & Allen,* and *Leese & Stewart,* for appellees.

RAGAN, C.

In June, 1889, M. Isabel Bond owned lots C, D, E, and F of Bigelow's subdivision of lots 11 and 12, block 27, in the city of Lincoln. On the 29th of this month she entered into an agreement with the appellee Holmes, in and by which he was to furnish the brick and perform the labor for the erection for Mrs. Bond of a four-story brick hotel on said property. At that time the appellant Marquett, held a mortgage on these lots to secure a debt of $2,200 and interest owing to him by Mrs. Bond. On the 18th day of July, this year, Mrs. Bond made application to the appellant the Missouri, Kansas & Texas Trust Company (hereinafter called the Trust Company), for a loan of $34,000, to be secured by a mortgage on the above described property, or, as the application expressed it, Mrs. Bond appointed the Trust Company her agent for procuring such loan. The appellant Drexel made a loan through the said Trust Company to Mrs. Bond on said property for $30,000, and to secure the same took a mortgage on said real estate, bearing date August 1, 1889, but not recorded until the 26th day of that month and was not executed until about that date. The payment of this mortgage was guaranteed to Drexel by the Trust Company. On the date of the mortgage, Mrs. Bond and the Trust Company, as agent of Drexel, entered into an agreement in writing, in and by which, after reciting that Mrs. Bond had executed her obligation to Drexel for $30,000 and secured the same by a mortgage on said property, it was pro-

vided that Mrs. Bond should at once erect a five-story stone and brick building on said lots and that the Trust Company, as the agent of Drexel, should pay the proceeds of said loan to Mrs. Bond as the erection of said building progressed. These payments were to be made upon the delivery to the Trust Company, or its agents, receipted bills of an equal amount as the payments due for labor and materials entering into the construction of the building.

Before the recording of the Drexel mortgage, Mrs. Bond and the appellees Holmes and the Henry & Coatsworth Company (hereinafter called the Coatsworth Company) agreed in writing with the appellant Marquett if he would release his mortgage on said lots, that Holmes would pay him thirty (30) and the Coatsworth Company forty (40) per cent of the estimates or money that might become payable to them for materials furnished in the erection of the building on said lots, and relying on said promises the appellant Marquett did release his mortgage.

Mrs. Bond, as principal, and the appellees Holmes and Doolittle, as sureties, executed to the appellant Drexel, on the 1st day of August, 1889, a bond in the sum of $25,000 to protect and indemnify Drexel and his agents against all liens for labor or materials that might be filed against said lots and building. This bond recited that the time allowed by statute for filing mechanics' liens had not expired; that Mrs. Bond should pay for all work done and all material furnished for said building, and keep the same clear from all liens on account therefor; that in case she failed to perform her contract, Drexel, or his agent, the Trust Company, might take possession of the building and complete the same and pay for the labor and materials from the funds remaining from the Drexel loan.

On the 28th day of December, 1889, Mrs. Bond executed a mortgage to the appellees Holmes and Doolittle, sureties on her indemnity bond, the conditions of which mortgage

were as follows : " This mortgage is given to indemnify said Doolittle and Holmes against loss that may accrue to them by reason of their having become sureties for said bond in a certain indemnity to the Trust Company and Drexel for the completion and payment for material and labor in the construction of a building on said lots above described."

On February 17, 1890, Mrs. Bond and the appellant the Trust Company entered into a written agreement which, after reciting the ownership of the lots by Mrs. Bond, that she had begun the erection thereon of a hotel, that Drexel had a mortgage on the same for $30,000 which was unpaid, that the appellees Doolittle and Holmes had executed a bond to Drexel to hold him harmless against any liens that might be filed against said hotel, that there were large sums of money owing and unpaid to certain persons who claimed to have performed labor and furnished material for said building, provided that for the purpose of giving additional security for the fulfillment of said bond of indemnity, and for the purpose of raising money to pay for such labor and materials furnished, and to complete said building, Mrs. Bond should at once execute to the appellant Braley a mortgage upon the property to secure a note of $30,000, due one year from February 17, 1890, and that said appellant should at once take possession of said hotel and complete the same, and should from the proceeds of the new mortgage pay for such of the work done and material furnished as he should deem best. Braley was the agent of the Trust Company and the Trust Company was the agent of Drexel. In pursuance of this agreement, and on the same date, Mrs. Bond executed and delivered to Braley a mortgage on all the above described real estate and other property for $30,000, due in one year, and surrendered possession of the hotel and lots on which the same is situate.

The appellant Holmes began the furnishing of material and performing of labor under his contract on the 5th day

of August, 1889. The Coatsworth Company began the furnishing of material under its contract on August 21, 1889. All the other lien claimants commenced the furnishing of material or the performance of labor after the 26th day of August, 1889.

A large number of mechanics' liens were filed against the property by various parties to this suit. All of said liens were duly assigned to the Trust Company, except the following: Holmes, the Coatsworth Company, Baird Bros., the Capital City Planing Mill Company, H. B. Dodge & Co., the Crane Elevator Company, and the Reliance Wire Works Company. Thus matters stood when the appellee the Coatsworth Company brought this action to foreclose its lien against the hotel and lots for material furnished by it in the erection of the hotel. A large number of persons were made defendants or intervened, all of whom, except four, filed answers or cross-petitions, claiming liens on the building and lots. The appellants Drexel, the Trust Company, and Braley filed their answer and cross-petition setting out the Drexel mortgage, the mortgage made by Mrs. Bond to Braley, the indemnity bond given to Drexel by Mrs. Bond, Holmes and Doolittle, and the failure of Mrs. Bond to keep the building free from mechanics' liens. Appellant Marquett intervened in said action, and filed a cross-petition setting out the mortgage he held upon said premises and the release of the same at the request and on the strength of the promises made to him by Bond, Holmes, and the Coatsworth Company, and prayed to be subrogated to the rights of Holmes and the Coatsworth Company. The district court rendered a decree in and by which it divided the liens into five classes, as follows:

*a.* The first lien was given to Holmes and the Coatsworth Company, prorating.

*b.* The second lien was given to Drexel on his mortgage.

*c.* The third lien was given to Baird Bros., the Capital

City Planing Mill Company, H. B. Dodge & Co., the Crane Elevator Company, and the Reliance Wire Works Company, prorating.

*d.* The fourth lien to the appellant Marquett.

*e.* The fifth lien was given to the Trust Company on the mortgage executed to Braley, February 17, 1890. This lien was made up of the amount of various mechanics' liens purchased by and assigned to the Trust Company.

*f.* The court found and decreed that the appellants Holmes and Doolittle were not liable as sureties on their indemnity bond.

All parties to the suit appeal except Holmes, Bond, Doolittle, and the Coatsworth Company.

We will first dispose of Marquett's appeal. The appellants Holmes and the Coatsworth Company promised Marquett in writing that if he would release his mortgage upon the property of Mrs. Bond, Holmes would pay Marquett thirty (30) per cent, and the Coatsworth Company forty (40) per cent of their estimates on each story of the hotel until the full payment of Marquett's claim. Marquett relied upon these promises and released his mortgage, and his debt remains wholly unpaid. Holmes and the Coatsworth Company received a valuable consideration for these promises and they must be held to their performance. They are now estopped from claiming liens on this property prior to Marquett. To permit this would be unfair, inequitable, and unjust. Marquett is entitled to be subrogated to the extent of his claim to whatever lien Holmes and the Coatsworth Company may have upon this property, and their liens should have been charged with the amount due Marquett. The decree of the district court, in that it did not do this, was in that respect erroneous.

It is claimed by the appellants, and especially by the Trust Company, that the finding of the district court that Holmes had a balance of $8,250 and interest, due him

from Mrs. Bond, is incorrect. Holmes' entire claim amounted to $12,100, which he had credited with $3,850.

On the trial there were put in evidence receipts signed by Holmes amounting to $6,900, and it is contended that he should be bound by them and thus increase his credits the difference of $6,900 and $3,850. It appears from the record that the method by which this part of the business was conducted was as follows: As before stated, the Trust Company was to disburse the $30,000 of the Drexel mortgage, as the work on the hotel progressed, on orders from Mrs. Bond. Mrs. Bond would give Holmes an order for, say, $2,000; he would take this to the Trust Company's agents, leave it with them with his receipt for $2,000 and procure from the agents $1,400 in money; and in this way Holmes receipted for $6,900, when, as a matter of fact, he only received $3,850 in money. The Trust Company's agents and Mrs. Bond were witnesses at the trial, and none of them claim that Holmes had actually received more money than $3,850. We do not think that the district court was wrong in its finding as to the amount due Holmes.

The same objection is urged by the appellants against the amount found due the Coatsworth Company; but as this claim is based on the same theory as the objection to Holmes' claim, and the method of conducting the business of the Coatsworth Company was substantially the same, the answer to the objection must be like the one to the objection of the Holmes claim, and the finding of the court as to the amount of the Coatsworth Company's claim approved.

The Trust Company, however, insists that the credits acknowledged by Holmes and the Coatsworth Company should be increased so as to equal the amount of their receipts, and this contention appears to be based on the assumption that the Trust Company was, by the orders and receipts, led into paying out, on the orders of Mrs.

Bond, a greater sum of money to her than the work done amounted to. Now, whether or not the value of the work done at a given date was equal in amount to the orders given was a question of fact; perhaps the burden was on the Trust Company to establish that it was not; and whether the Trust Company or its agents paid these orders in full without knowing the orders exceeded the work are questions of fact. We cannot say that the evidence is insufficient to sustain the court's finding in this respect.

It is also insisted by the appellant Drexel that his mortgage should have been made a first lien.

Holmes and the Coatsworth Company both began the furnishing of materials for the building prior to August 26, the date of the record of Drexel's mortgage, and by the statute a lien of a mechanic or laborer dates from the commencement of the furnishing of materials or from the commencement of performing labor. The appellants Holmes and the Coatsworth Company are therefore entitled to liens on this property prior to Drexel.

A party taking a mortgage on real estate is bound to know whether material has been furnished or labor performed in the erection of improvements on the real estate within the four immediate prior months. Drexel's mortgage was a lien only on the interest of Mrs. Bond in the mortgaged property. Her interest was the estate she conveyed to Drexel, less the amount due and to become due Holmes and the Coatsworth Company for labor or material, the commencement of the doing or the furnishing which was prior to the date of the record of Drexel's mortgage.

On the other hand, some of the appellants claim that Drexel's mortgage should have been postponed to the liens of all parties who furnished material or performed labor in the erection of the hotel. To sustain this it is argued: (1) that there are no priorities amongst mechanics' liens for labor or material on the same improvement; (2) that the

true meaning of our statute is that all parties performing labor or furnishing material for an improvement on real estate have a lien therefor from the commencement of the improvement; or, to state the second argument differently, after an improvement has been begun, a mortgage placed thereon is subject to a lien for labor done or material furnished, the commencement of which was subsequent to the record of the mortgage. In support of this counsel cite Phillips, Mechanics' Liens, sec. 216; *Neilson v. Iowa Eastern R. Co.*, 44 Iowa, 71. An examination of the first authority shows that the statute on which the author is commenting provided that the building should be subject to the payment of debts of the mechanics, etc., "before any other lien which originated subsequent to the commencement of said house or other building." In the Iowa case the syllabus is as follows: "A mechanic's lien attaches from the commencement of the building and takes precedence over a mortgage executed after that time, although the particular work for which the lien is claimed was not commenced until after the execution of the mortgage." But it will be seen from an examination of the opinion that the conclusion reached was based upon the revision of the Iowa statute, which, the court say, " provides in substance that mechanics' liens shall have priority over a mortgage executed upon the land and building after the commencement of the building or improvement." These authorities, then, are not in point.

Section 3, chapter 54, Compiled Statutes of Nebraska, provides: "And shall from the commencement of such labor or the furnishing such materials * * * operate as a lien." While this court has held that this statute is remedial and should be liberally construed, it has never arrogated to itself the right, if it had the disposition, to put a construction on the law that would, to all intents and purposes, amount to an amendment of it. By the Nebraska statute a person who performs labor or furnishes material

for an improvement on real estate is given a lien thereon from the date he commences such labor or commences furnishing of materials; but this lien attaches only to the interest of the contractee in the property on which the improvement is to be erected, at the date of the commencement of the labor or the commencement of furnishing material. The material-man or laborer, furnishing material or performing labor for an improvement on real estate, must then take notice of his contractee's title and interest in the property as shown by the public records at that date.

In *Choteau v. Thompson*, 2 O. St., 114, it is said: "If A. and B. commence work or the furnishing of materials and afterwards the owner mortgage the premises to C., and after this D. and E. begin to work or to furnish materials, here A. and B. have priority over C. and C. has priority over D. and E. In such case A. and B. must receive what they would be entitled to if C.'s mortgage had no existence; the residue must be applied next to the satisfaction of the mortgage; and whatever may remain after that must be distributed to D. and E. *pro rata.*" The statute considered in that case appears to have been substantially like the Nebraska statute.

In *Crowell v. Gilmore*, 18 Cal., 370, it is said: "The mechanic making the first contract, or first commencing work on a building, has no priority over others commencing work subsequently. The statute places all claimants on an equality and directs the property to be sold and the proceeds applied to all without preference. This rule of equality would not apply if some mechanics began work before a mortgage was executed, by the owner of the property, and some afterwards. In such case the first lienholders would have priority over the mortgagee, while the latter would not. The first class would be paid in full before the mortgage; then the mortgage; then the last class, each lienholder having equal claims with the others of his

class." An examination of the opinion in this case leads to the conclusion that the California statute on which the opinion is based is very similar to the Nebraska statute.

In the case at bar all liens, except those of Holmes and the Coatsworth Company, were for labor performed or material furnished, the commencement of the doing and the furnishing which was after the recording of the Drexel mortgage. This mortgage was then, correctly decreed by the court below, a lien on the property prior to all liens except those of Holmes and the Coatsworth Company.

The district court gave the third lien to only a part of those who claimed liens for material furnished for the improvement, the commencement of which was after the Drexel mortgage, viz., Baird Bros., the Capital City Planing Mill Company, H. B. Dodge & Co., the Crane Elevator Company, and the Reliance Wire Works Company. These were, by the decree, to prorate each with the other, but the court postponed to these liens the following, also for material furnished in the erection of the improvement, the commencement of which furnishing was after the Drexel mortgage, viz.: Korsmeyer & Co.; Pomeroy Coal Company; W. H. Tyler; C. N. Deitz; Nicholls Roofing Company; S. E. Moore; the Adamant Wall Plaster Company; C. E. Hedges; Rudge & Morris; the Lincoln Glass Company; G. Andrew; the Midland Electric Company; F. A. Nason & Co.; William Gaiser; William Robinson; A. T. Leming; R. S. Young, and J. H. O'Neill. All these postponed liens had been assigned to the appellant Trust Company, and it claimed, and claims now, it stood in the same situation as its assignors.

It is clear from the authorities that all the liens for materials furnished or labor performed, the commencement of the doing or the furnishing which was after the recording of the Drexel mortgage, belonged to the same class, and are entitled to and do prorate with each other. Why, then, should not the assignee of some of these claims be allowed

to prorate if his assignor could? "Under our law, the as-
signee (of a mechanic's lien) is subrogated to all the rights of
the assignor." (Chief Justice MAXWELL in *Rogers v. Omaha*
*Hotel Co.*, 4 Neb., 59.) The district court appears to have
postponed these assigned liens on the theory that they were
merged in the mortgage given by Mrs. Bond to the appel-
lant Braley, agent of the Trust Company, on February 17,
1890, as the consideration for this mortgage was used in
buying up these liens for and in the name of the Trust
Company. But did the liens merge in the mortgage?

In *Smith v. Roberts*, 91 N. Y., 470, it is said (I quote
from the syllabus): "While a merger at law follows upon
a union of a greater and a lesser estate in the same owner-
ship, it does not follow in equity, and estates will be kept
separate where such is the intention of the parties and jus-
tice requires it. That intention may be gathered not only
from the acts and declarations of the party, but from a
view of the situation as affecting his interests."

Now there is no direct evidence in the record that either
the assignors or the assignee of these liens intended they
should merge in the mortgage; and if we turn our atten-
tion to the situation of the assignee, the Trust Company,
it certainly was against its interests they should merge.
We can almost say that had the Trust Company expected
them to merge, it would never have advanced the money
for the purchase of the liens; and, to apply the doctrine of
merger here, would be manifestly unfair and unjust. Had
the Trust Company not bought these liens, they would
have prorated with the others of their class, so that the
others are not in the least prejudiced by their not merging,
but the Trust Company is prejudiced if they are. We
adopt the rule in the above case as both sensible and just,
and conclude that the decree of the district court, postpon-
ing the liens assigned to the Trust Company, was erro-
neous.

Complaint is made by some of the numerous appellants

of the allowance by the court below of liens to certain parties, viz., the Capital City Planing Mill Company. The objection to this lien is that the affidavit filed is not sufficient to entitle the claimant to a lien.    The affidavit (omitting the formal parts) was as follows: " John A. Buckstaff, being first duly sworn, on his oath says :   *   *   *   is a true and correct account   *   *   *   of materials   *   *   * furnished by this affiant."   *   *   *   It is signed "Capital City Planing Mills, Badger Lumber Company, owners, per J. A. Buckstaff, Sec'y."    The heading of the itemized statement, to which the affidavit for a lien is attached, is as follows: "Lincoln, Nebraska, Apr. 15, 1890.   Mrs. M. Isabelle Bond, To Capital City Planing Mills, Badger Lumber Company, Owners, Dr."    Section 3, chapter 54, Compiled Statutes, provides : "Any person entitled to a lien under this chapter shall make an account in writing of the items   *   *   *   and after making oath thereto," etc.   This affidavit is not ·within the letter of the statute.   Is it within the spirit of the law ?

In *Rogers v. Omaha Hotel Co.*, 4 Neb., 58, Chief Justice MAXWELL, speaking for this court, said : " The object of the law under consideration (mechanic's lien law)· being to secure the claim of those who have contributed to the erection of a building, it should receive the most liberal construction to give full effect to its provisions."    This case is cited with approval in *White Lake Lumber Co. v. Russell*, 22 Neb., 126.

In *Delahay v. Goldie*, 17 Kan., 263, it is said : "Under the mechanic's lien law   *   *   *   the statement required to be filed may be verified by an agent of the claimant."

This affidavit and account as filed sufficiently show that the Capital City Planing Mill Company had furnished material to Mrs. Bond for the erection of the hotel, and while the affidavit bears on its face the evidence of carelessness, it sufficiently shows that Buckstaff was the agent of the claimant.   We hold, therefore, that it sufficiently

complied with the statute.   (See also Phillips, Mechanics'
Liens, sec. 366, and cases there cited.)

The Crane Elevator Company.—The objection to this
lien is that by the contract between the elevator company
and Mrs. Bond, under which the fixture was delivered to
her, it was provided : " The title and possession of the ele-
vator shall remain in the Crane Elevator Company until
the final payment shall be made, and they shall have the
right at all times, on the failure on your part to make all
payments as provided, to remove the elevator and retain
possession of it, and also to retain all payments that have
been made, as liquidated damages for non-fulfillment of the
contract."

Section 1, chapter 54, Compiled Statutes, provides:
"Any person who shall   *   *   *   furnish any fixture."
*   *   *   The elevator, within the meaning of this law, is
a fixture; and, uninfluenced by authority and looking only
to this statute, we would say that to entitle a party to a
lien for this fixture he must part with the possession, the
right to the possession, and with the title to it.   The con-
tract between the elevator company and Mrs. Bond was
and is good as between them, and as to all other persons
except purchasers without notice and judgment creditors of
Mrs. Bond. (*Aultman v. Mallory*, 5 Neb., 178; *McCor-
mick v. Stevenson*, 13 Id., 70.)

In *Clark v. Moore*, 64 Ill., 279, one of the questions
was whether the retention by the vendor of the right to the
possession and title was a waiver of the vendor's right to
a mechanic's lien, the court say: " It is also insisted that
appellees waived their lien when they sold the property by
reserving a lien upon it in the written contract; that they
thereby received and held additional security that operated
to destroy any lien that would otherwise have attached.
*   *   *   In their effort to retain a lien on the machinery
furnished by appellees they took no collateral or independ-
ent security.   *   *   *   The lien attaches to and incumbers

the property to improve which the material is furnished, and the efforts to acquire a more specific and exclusive lien thereon in nowise manifests an intention to release the property from all lien and to look to other security for payment, but it shows the very opposite intention, an intention to hold, if possible, the property furnished liable for the payment of their claim."

In *Case Mfg. Co. v. Smith*, 40 Fed. Rep., 339, it is said : "Retention by a seller of title to machinery placed on land until the price is paid, with a reservation of the right in case of default in payment, to take possession of and remove such machinery without process, is not a waiver of the lien given by the code." (Tenn., sec. 2739.) The opinion cites enough of the Tennessee code to show that it is not materially different from the Nebraska law. It also cites *Anthony v. Smith*, 9 Humph. [Tenn.], 508, and *Fogg v. Rogers*, 2 Cold. [Tenn.], 290, as sustaining the doctrine laid down in the trial case.

Following these authorities, which we do with reluctance, we have reached the conclusion that the finding and decree of the district court giving the Crane Elevator Company a lien must be sustained.

H. B. Dodge & Co.—There are two objections to this claim. The first is that the affidavit filed with the itemized account was made by H. B. Dodge and that it recited that the materials were furnished by the affiant; the affidavit was signed by H. B. Dodge. An examination of the account attached to the affidavit, however, discloses the fact that the account was between H. B. Dodge & Co. and Mrs. Bond, and it sufficiently appears that the material was furnished by H. B. Dodge & Co. In view of what has been said above in reference to the affidavit of the Capital City Planing Mill Company, we think this affidavit sufficiently complies with the statute, and that the finding and decree of the district court giving Dodge & Co. a lien was not erroneous so far as the affidavit is concerned.

Second objection.—The account attached to the lien in this case consisted of two items, as follows: May 9, 1890, to bill Venetian blinds, as per contract, $540; Oct. 1, 1890, to bill Venetian blinds, as per contract, $12.96. It is here claimed that as more than four months elapsed between the date of the furnishing of these two items, that Dodge & Co. can have a lien for nothing more than the last item. The language of the affidavit attached to this lien is, "that said materials were furnished by said affiant to the said M. Isabel Bond at the time stated in said account." Now if we are limited to the date the account shows on its face, and to the affidavit in this case, then the contention of the appellants is correct. The solution of the question depends upon whether these two items are parts of one running account, or, in other words, whether they were both furnished under one contract made prior to furnishing the first item. On looking into the evidence we find that the two items were furnished pursuant to one contract made prior to the date of the first item, and that the second item was a completion of the contract.

In *Fulton Iron Works v. North Center Creek Mining & Smelting Co.*, 80 Mo., 265, a question precisely like the one we are considering arose, and the court said: "A mechanic's lien is enforceable for all the items of an account furnished by the original contract * * * in the construction of the building, * * * where it is inferable from the evidence that they were furnished under one contract." We approve the doctrine laid down in this case. It follows, therefore, that the decree of the district court in allowing the claim of H. B. Dodge & Co. was correct.

The finding and decree of the district court that Holmes and Doolittle, sureties on the undertaking given by Mrs. Bond to Drexel to indemnify him against liens on the property, were not liable on the bond is assailed as erroneous.

It appears from the evidence that an agent of the Trust

Company, or Drexel, came to Lincoln and informed Mrs. Bond that she would have to give Drexel an undertaking to protect him against mechanics' liens on the property on which he was about to lend her the $30,000 represented by his mortgage, and inquired what sureties she could furnish. She named to him E. D. Appleget, George B. Skinner, L. K. Holmes, and William B. Hughes. The agent then investigated through a commercial agency the financial standing of these gentlemen and found it satisfactory. He returned to Kansas City and there had a bond prepared on a type-writing machine with "M. Isabel Bond, as principal, E. D. Appleget, George B. Skinner, L. K. Holmes, and William B. Hughes, as sureties." At the foot of the bond were left five spaces for signatures, opposite each of which the word "Seal" was printed. The agent then sent this prepared undertaking to Mrs. Bond for execution by her and the parties named as sureties. Holmes signed the bond on the last space for signatures and Doolittle signed below that. Appleget, Skinner, and Hughes neither signed the bond, and across their names an ink line with a pen was drawn, and the name of Doolittle was written above in the same line. In this condition the bond was returned by Mrs. Bond to the obligee thereof. There was evidence on the trial that Mrs. Bond promised Holmes that Appleget, Skinner, and Hughes would all sign, and that Holmes and Doolittle signed on the condition and understanding and agreement with her that if Appleget, Skinner, and Hughes did not sign, the bond was to be invalid and returned to them, Holmes and Doolittle. That the names of Appleget, Skinner, and Hughes were not erased when Holmes and Doolittle signed.

In *Cutler v. Roberts*, 7 Neb., 5, the present chief justice, speaking for this court, said: "Where a bond contains in the obligatory part the names of several persons as sureties, if a part sign the same with an understanding and on the condition that it is not to be delivered to the obligee

18

until it is signed by all whose names appear in the obligatory part thereof as sureties, it will not be valid as to those that do sign until the condition is complied with."

In *Hagler v. State*, 31 Neb., 144, Justice NORVAL, speaking for this court, said: "Where an official bond is altered after the same has been signed, but before its delivery and approval, by an erasure of the name of one of the sureties thereon, and the alteration is plainly noticeable, all the sureties are released who had no knowledge of or did not consent to the alteration or ratify it."

The finding and decree of the district court were within the principles of these cases. This undertaking was void from the beginning. It had never been valid so far as these sureties were concerned, and Mrs. Bond's delivery of it to her principal was unauthorized. Appellants, however, insist that Holmes and Doolittle were liable on this bond because Mrs. Bond executed to them a mortgage on the property to indemnify them from loss by reason of having signed it. In other words, the taking of the indemnity mortgage was a ratification by Holmes and Doolittle of the unauthorized delivery of the mechanics' lien bond. To this it is answered by the sureties: "That at the time they took the indemnity mortgage they had no knowledge that the mechanics' lien bond had not been signed by Appleget, Skinner, and Hughes; that on the 17th day of February, 1890, Drexel's agent, Braley, procured them to deliver to him the indemnity mortgage (it had never been recorded) on the promise that another loan would be made to Mrs. Bond by the Trust Company, and secured by a second mortgage on the property, and out of the proceeds of this mortgage all of the mechanics' lien claims against the property would be paid." To sustain these allegations there is abundant evidence. Certain it is that Drexel and the Trust Company's agent, Braley, did get possession of the indemnity mortgage made to Holmes and Doolittle; that at about that date Mrs. Bond made a

second mortgage to Braley for $30,000 on this and other property and surrendered possession of the hotel. Another significant circumstance is that across the face of this indemnity mortgage is written "Canceled: M. Isabel Bond, February 17, 1890." This, it will be remembered, is the date of the second mortgage to Braley for the Trust Company.

In *Livesey v. Omaha Hotel Co.*, 5 Neb., 50, the late and lamented Justice GANTT, speaking for this court, said: "Waiver is an intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it."

The sureties brought themselves within the doctrine of this case, and the finding and decree of the district court that they had not waived their right to object to the unauthorized delivery of the mechanics' lien bond is supported by the evidence.

There are in the arguments and proofs of counsel other grounds which answer the claim of ratification by the sureties—grounds fully supported by the record, but the foregoing are sufficient, and they will not be further noticed. The decree of the district court is reversed and judgment and decree rendered here as follows, the amounts of judgments to draw interest from June 17, 1891:

1. In favor of Turner M. Marquett, against the estate of M. Isabel Bond, Leonidas K. Holmes, and the Henry & Coatsworth Company, for $2,560, with seven per cent interest; the same to be a first lien on lots C, D, E, and F, Bigelow's subdivision of lots 11 and 12, block 27, in the city of Lincoln, Lancaster county, Nebraska.

2. In favor of Leonidas K. Holmes, against the estate of M. Isabel Bond, for $7,867.35, with interest at seven per cent; and in favor of the Henry & Coatsworth Company, against the estate of M. Isabel Bond, for $4,654.65, with seven per cent interest; the last two to be second liens on the above described real estate and to prorate one with the other.

3. In favor of Anthony J. Drexel, against the estate of M. Isabel Bond, for $33,777, with six per cent interest; the same to be a third lien on said real estate.

4. In favor of Baird Bros. for $91; in favor of Capital City Planing Mill Company for $740; in favor of H. B. Dodge & Co. for $585; in favor of Crane Elevator Company for $3,212; in favor of Reliance Wire Works Company for $358; in favor of Missouri, Kansas & Texas Trust Company for $21,905. Each of these judgments to be rendered against the estate of M. Isabel Bond, each to draw interest at the rate of seven per cent, and to be fourth liens on the above described real estate and prorate each with the other.

5. Judgment in favor of Leonidas K. Holmes for $1,-392.65. Judgment in favor of the Henry & Coatsworth Company for $1,167.35. Both these judgments to be rendered against the estate of M. Isabel Bond; both to draw interest at the rate of seven per cent, and to be fifth liens against the real estate above described and to prorate one with the other.

6. Judgment releasing and discharging Leonidas K. Holmes and John Doolittle from liability as sureties on the mechanics' lien bond given by them to Anthony J. Drexel.

IRVINE, C., concurs.

RYAN, C., having been of counsel in the case, took no part in the argument or the decision here.