KROTTER & SAILORS, A CO-PARTNERSHIP, APPELLANT, V. ROY J. PEASE ET AL., APPELLEES,

74 N. W. 2d 538

Filed February 3, 1956. No. 33893.

*Charles M. Bosley* and *Robert C. Bosley*, for appellant.

*Daniel E. Owens, Ross D. Druliner, Jr., Robert S. Finn, Fred T. Hanson, Jack H. Hendrix,* and *Hines & Hines,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Roy J. Pease and Bernice F. Pease, husband and wife, were the owners as joint tenants of Lot 4 in Block 5, Smith's Addition to Benkelman. They made an oral agreement about December 24, 1951, with Krotter & Sailors, a co-partnership and a retail dealer in lumber, building materials, and hardware in Benkelman, by the terms of which it was to receive the net proceeds of a loan of $8,500 made by the Tecumseh Building & Loan Association to the owners of the premises and appellant was privileged to furnish materials within the lines which it handled for the construction of the house and to pay the cost of the labor and all materials furnished for the building. It was agreed that any amount of the cost of the construction thereof in excess of the amount received by appellant from the proceeds of the loan made to the owners by the building and loan association was to be paid by the owners to appellant when the construction was completed. The loan was made and the net proceeds thereof were received by appellant and it paid the cost of all labor and materials used in the construction of the house as the bills therefor were presented to appellant at its place of business. There were materials used in the building that were not furnished by appellant and some of them were selected and purchased by the owners as it was understood they

might do as a part of the agreement between them and appellant. The cost of these were paid by it. The owners selected and purchased linoleum at the store of Paul F. Morris. He delivered it to the house and installed it therein on April 10, 1952. The residence was completed and the owners moved into it April 12, 1952. The statement for the cost of the linoleum was on June 10, 1952, at the request and by direction of Roy J. Pease presented to appellant by Paul F. Morris and it was paid by appellant. That was the first time that Paul F. Morris knew that appellant was to pay the cost of the linoleum and it was the first time that the appellant knew the cost of it or had the opportunity to pay it.

Appellant filed a claim of lien under the Mechanic's Lien Act in the office of the county clerk of Dundy County October 10, 1952. The last item of the claim of lien is dated June 10, 1952, and is described as "Paul Morris Linoleum 254.04." It is not claimed that the linoleum was purchased, delivered to the premises, or installed therein that date. It is established without dispute that it was furnished by Paul F. Morris and installed in the house as floor covering on April 10, 1952. The last item on the claim of lien represents the payment of the cost of the linoleum by appellant to Paul F. Morris. The last material that was furnished for the house was May 19, 1952, and it consisted of four minor items at a total cost of $3.17.

A mortgage given by the owners on the premises as security for the payment of a note they owed the Security State Bank of Bird City, Kansas, was filed for record in the office of the county clerk of Dundy County February 13, 1953. The bank pleaded in this case that the claim of lien of appellant was insufficient and was not a lien on the premises because it was not filed in the office of the county clerk within 4 months of the time any labor was performed or material was furnished in the building of the house as required by the Mechanic's Lien Act of the state.

Roy J. Pease died August 12, 1954, and Bernice F. Pease became the sole owner of the premises. This case was brought by appellant to foreclose the lien it claimed on the premises by virtue of the claim of lien filed by it as above stated. The district court found upon the trial of the case that the building and loan association had a first lien and the bank had a second lien on the premises; that the last materials for the construction of the house were furnished May 19, 1952; that the linoleum mentioned in the claim of lien was furnished by Paul F. Morris and was installed and attached to the house April 10, 1952; that appellant paid the cost of the linoleum to Paul F. Morris June 10, 1952; that the payment of the cost of the linoleum was not the furnishing of material within the meaning or scope of the Mechanic's Lien Law of the state; and that the claim of lien of appellant was filed more than 4 months after anything was furnished by it for the construction of the house, and that the claim was invalid. A judgment of dismissal was rendered as to the cause of action alleged by appellant, its motion for a new trial was denied, and it has prosecuted this appeal.

The adversaries in this appeal are appellant and Security State Bank of Bird City, Kansas, hereafter referred to as appellee. The other parties to the case named in the record do not oppose the judgment of the district court in any manner or in any respect.

The claim of appellant is that it was obligated by contract with the owners of the premises improved by construction of the house to pay Paul F. Morris the cost of the linoleum he furnished and laid in the house; that the payment of this item was indistinguishable from the payment by appellant as the contract obligated him to do of other amounts for items of materials and labor required for the construction of the building; and that appellant was performing his contract obligation when he paid Paul F. Morris the cost of the linoleum June 10, 1952, and "On that date, the plaintiff (appellant)

actually furnished the linoleum under the terms of the agreement."

Appellant to sustain the lien it claims relies exclusively upon the fact of its payment of the cost of the linoleum June 10, 1952, as a furnishing of material within the Mechanic's Lien Act notwithstanding it is undisputed that the linoleum was actually delivered to the house constructed on the premises of the owners, placed therein, and attached thereto on April 10, 1952, that the owners took possession of it on April 12, 1952, and thereafter occupied it as their home. The appellee insists that the payment of the cost of material furnished and used as a part of the construction of the house did not constitute furnishing material so as to permit the filing of a mechanic's lien within 4 months after the date of the payment because the material was furnished and placed in the building by third party 2 months before the date of the payment; that the payment of money for material used in the construction of a building does not in any event constitute the furnishing of material within the meaning of the Mechanic's Lien Act; and that the claim of lien by appellant is in any event ineffective and invalid.

The right to a mechanic's lien is of statutory origin. It did not exist at common law or in equity. A claimant of such a lien must in the first instance bring himself within the statute. Fremont Foundry & Machine Co. v. Saunders County, 136 Neb. 101, 285 N. W. 115; Timber Structures v. C. W. S. G. Wks., 191 Or. 231, 229 P. 2d 623, 25 A. L. R. 2d 1358. A claimant to be entitled to the benefit of the statute providing for such a lien must comply with the procedure necessary to perfect a lien. Parsons Construction Co. v. Gifford, 129 Neb. 617, 262 N. W. 508; Davidson v. Shields, 129 Neb. 877, 263 N. W. 490; Fremont Foundry & Machine Co. v. Saunders County, *supra;* Timber Structures v. C. W. S. G. Wks., *supra.* If a claimant is within the statute granting the right and has complied with the proce-

dure specified therein to perfect a lien the provisions of the statute will be liberally interpreted to accomplish the purposes of the legislation. Grantham v. Kearney Municipal Airport Corp, 159 Neb. 70, 65 N. W. 2d 325.

The statute providing for a mechanic's lien defines who are entitled to a lien, for what a lien may be claimed, and the procedure to secure a lien. §§ 52-101, 52-102, 52-103, R. R. S. 1943; Durkee v. Koehler, 73 Neb. 833, 103 N. W. 767. The relevant language of the first section is: "Any person who shall perform any labor or furnish any material * * * or fixtures * * * for the construction * * * of any house * * * by virtue of a contract or agreement, expressed or implied, with the owner thereof * * *, shall have a lien to secure the payment of the same upon such house * * * and the lot of land upon which the same shall stand * * *." A discussion of this statute in Barry v. Barry, 147 Neb. 1067, 26 N. W. 2d 1, contains the following: "It will be noted that the first few words are a designation of those who are entitled to a lien under the statute. They are: 'Any person who shall perform any labor or furnish any material or machinery or fixtures * * *.' * * * The right to this type of lien is not new to the laws of this state. In fact the right was created by statute even before statehood and has continued without interruption thenceforth. * * * An examination of these statutes in sequence will disclose some changes and extensions in some respects but that there has been no change in the designation of those who are entitled to a lien. * * * While this language is broad in its implications yet we cannot think that it is broad enough to include plaintiffs in the class of those entitled to a lien for material furnished. Viewing the evidence most favorably to them it cannot be said that they furnished material. Rita and Mary C. Barry furnished only money. * * * All we know is that each paid a part of the costs of the furnace and of its installation. The material for which they paid was furnished by Olson

Bros. Bernard Barry is in an exactly comparable situation with regard to the furnace. With regard to the other items he is in the situation also of having paid for material furnished by others. We are clearly of the opinion that the statute does not extend its protection to such as these plaintiffs."

The Mechanic's Lien Act provides security exclusively for materialmen and laborers. The language is: "Any person who shall perform any labor or furnish any material * * * shall have a lien * * *." § 52-101, R. R. S. 1943. The allegations and proof of appellant are far short of charging or establishing that it furnished the linoleum within the meaning and intention of the statute. In Lovingood v. Butler Constr. Co., 100 Fla. 1252, 131 So. 126, 74 A. L. R. 513, it is said: "No provision is made by statute for a materialman's lien upon a building in favor of one who advances money to the owner to be used for the payment of bills for such materials, nor in favor of a creditor who at the owner's request pays the bills for such materials or promises the materialman to pay them." Glassco v. El Sereno Country Club, Inc., 217 Cal. 90, 17 P. 2d 703, approved the earlier case of Godeffroy v. Caldwell, 2 Cal. 489, 56 Am. Dec. 360: "It has long been the settled law of this state that 'the mechanics' lien law provides exclusively for the security of materialmen and laborers; and one who advances money as a loan, although it is expressly for the payment of materials and labor devoted to the erection of a building, can have no claim to the benefits of the law.'" The Glassco case also adopts what follows from Burr v. Peppers Cotton Lumber Co., 91 Cal. App. 268, 266 P. 1025: "The placing of appellant (the contractor), by reason of his alleged acts, within the classes afforded a lien under the California statute, would give anyone advancing moneys, which paid for supplies or material, in effect, a mortgage or trust deed upon property. That such is not the rule is announced both in text-books on the subject of

mechanics' liens, and the decisions of the Supreme Court of this state. Boisat on Mechanics' Liens, section 114, says: 'A statute giving liens to those furnishing work or material does not extend to those furnishing money with which the work and materials are paid for * * *.' " See, also, United States v. Rundle, 107 F. 227, 52 L. R. A. 505; Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321.

The Mechanic's Lien Act means that the right to a lien authorized by it is created immediately labor is performed or material furnished for the improvement of the property of an owner if a claim therefor is made as required by the act. If the procedure specified is satisfied the claim of lien "* * * shall, from the commencement of such labor or the furnishing of such material for two years after the filing of such lien, operate as a lien * * *." § 52-103, R. R. S. 1943. In Henry & Coatsworth Co. v. Fisherdick, 37 Neb. 207, 55 N. W. 643, this court said: "Under the law of this state the lien of a mechanic or laborer attaches at the commencement of the furnishing of the material, or at the commencement of the performance of labor by him, and not from the beginning of the construction of the improvement on which he labors or for which he furnishes material." The linoleum was furnished, placed in, and attached to the house April 10, 1952, and was used therein on and after April 12, 1952, by the owners of the property. The claim of lien attempted to be foreclosed herein was filed in the office of the county clerk October 10, 1952. This was 6 months after the linoleum was furnished and it was almost 5 months after the items of material were furnished that appear in the claim of lien on date of May 19, 1952. The maximum period allowed for filing a claim of mechanic's lien in the circumstances of this case had expired before October 10, 1952. § 52-103, R. R. S. 1943; Davidson v. Shields, *supra*.

Appellant makes reference to and stresses the con-

clusions of this court to the effect that the Mechanic's Lien Act is remedial and that it will be most liberally construed. This view has been frequently expressed and is firmly established but this does not mean that the words of the act will be forced out of their clear and natural meaning but rather that they will receive a fair and reasonable interpretation with respect to the objects and purposes of the legislation. The liberal interpretation authorized by this doctrine is one that effectuates the legislative intent and not one that evades or disregards the clear provisions of the enactment. The court may not under the claim of liberal construction of the act include within its operation claims of persons not specified in the statute. A litigant asserting a lien because of the act must bring himself fairly within the expressed intention of the legislation. The comment of this court in Henry & Coatsworth Co. v. Fisherdick, *supra,* is appropriate to be quoted: "While this court has held that this statute is remedial and should be liberally construed, it has never arrogated to itself the right, if it had the disposition, to put a construction on the law that would, to all intents and purposes, amount to an amendment of it."

The judgment of the district court should be and it is affirmed.

AFFIRMED.