ERNEST HULINSKY, DOING BUSINESS AS HULINSKY CONSTRUCTION, APPELLEE, V. JAMES B. PARRIOTT AND VIRGINIA L. PARRIOTT, HUSBAND AND WIFE, APPELLEES, AND THE BANK OF BRULE, NOW KNOWN AS ADAMS BANK & TRUST OF BRULE, APPELLANT.

441 N.W.2d 883

Filed June 30, 1989.   No. 87-049.

Neil E. Williams and Rita C. Grimm, of McGinley, Lane, Mueller, O'Donnell & Williams, P.C., for appellant.

Gary J. Krajewski, of McQuillan & Spady, P.C., for appellee Hulinsky.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and BROWER, D. JJ.

BROWER, D.J.

This action was brought by Ernest Hulinsky, appellee, against James B. and Virginia L. Parriott to foreclose upon a construction lien. The Bank of Brule (Bank), now known as the Adams Bank & Trust of Brule, was joined as a defendant because it has a trust deed and security interest in the Parriotts' real estate involved in the action. The trial court granted

foreclosure and ordered the proceeds generated from the sale to be applied to satisfy the liens of Hulinsky and the Bank, in that order of priority. The Bank appeals from the decision of the trial court, claiming the trial court erred in granting Hulinsky's construction lien priority over the lien of the Bank under its trust deed.

An action to foreclose a mechanic's or construction lien is one grounded in equity. In an appeal of an equity action, the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987).

A review of the record, which contains a stipulation entered into at the commencement of the trial, finds that on July 25, 1983, Hulinsky and the Parriotts entered into a memorandum construction contract, wherein Hulinsky agreed to construct a house on lots owned by the Parriotts in Brule, Nebraska. Hulinsky agreed to furnish all material and labor in consideration of Parriotts paying $53,000.

On September 12, 1983, Hulinsky commenced construction, furnishing materials and labor under the agreement. During the construction period, a number of changes were made in the plans and construction, which the evidence shows were agreed to by both Hulinsky and the Parriotts. These changes included: additional plumbing, the addition of a fireplace, foundation and wall relocations, structural changes to effect different room arrangements, additional windows and doors, electrical system modification, increased heating and air-conditioning, upgrades of the roof covering and cabinets, and a change of floor coverings.

On February 10, 1984, before the construction was completed, the Parriotts requested that Hulinsky stop work. Hulinsky performed no further construction work on the dwelling after the request. On March 22, 1984, Hulinsky filed a mechanic's lien for labor and materials in the amount of

$60,592.78, the net amount he claimed was due for labor and materials after allowing the Parriotts credit for a $30,000 payment that was received by Hulinsky.

The Parriotts had executed a trust deed on September 16, 1983, to the property involved in this action. The trust deed secured a master note in the amount of $53,000 to the Bank and was recorded the same day. The Bank concedes Hulinsky had visibly commenced work on the property before the trust deed was filed. During the construction period, one payment of $30,000 was made to Hulinsky under the construction contract by the Parriotts. Hulinsky knew the funds had come from the Bank. The Bank had charged other advances to the Parriotts during the period of construction, as evidenced by the loan disbursement sheet, but none of these funds were received by Hulinsky.

On November 13, 1986, the date of trial, Hulinsky and the Bank stipulated that the sum due the Bank was $53,094.38, which included interest to that date.

The Parriotts caused a petition in bankruptcy to be filed on July 11, 1985, and on December 27, 1985, they were discharged. The trustee in bankruptcy abandoned the property involved.

The Parriotts did not appear in the action, and the only witness at the trial was the plaintiff.

The trial court found the original contract had been amended to include the items added and claimed by Hulinsky, and awarded him the contract balance of $23,000, together with the added materials furnished in the amount of $11,134.13. The court found there was not sufficient evidence to award the amount claimed for additional labor. It awarded interest at 12 percent on the original contract balance and at 6 percent on the amount due on additional materials furnished up to the date of judgment, and thereafter at the rate of 14 percent on the entire amount.

The trial court found the Bank was entitled to judgment for the amount claimed with interest from date of judgment at $14.5128 per diem.

The Bank, to sustain its priority over the lien of Hulinsky, relies upon the fact that the money paid to Hulinsky came from funds received by the Parriotts from the Bank and that

Hulinsky had knowledge of that fact. The Bank claims that in the interest of justice it should be entitled to priority over the Hulinsky lien, at least to the extent of the $11,134.13 awarded for material furnished under the amendment to the original construction contract. The Bank makes no claim on appeal that the contract was not modified or that additional materials were not furnished. Its assignment of error goes to but one issue, and that is as to the priority of the Bank's lien. This court will not consider errors not properly assigned and discussed. Neb. Ct. R. of Prac. 9D(1) (rev. 1989); *State ex rel. Hilt Truck Line v. Jensen*, 218 Neb. 591, 357 N.W.2d 455 (1984).

Under the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 1988), adopted in 1981, a person who furnishes services or materials pursuant to a real estate construction improvement contract has a lien to secure the payment of his contract price. § 52-131. Hulinsky clearly has a lien under the act. The right to such lien is statutory in nature and did not exist in common law or in equity. *Krotter & Sailors v. Pease*, 161 Neb. 774, 74 N.W.2d 538 (1956). A claimant of such a lien must in the first instance bring himself within the statute providing for such procedure to perfect the same. *Ideal Basic Industries, Inc. v. Juniata Farmers Coop. Assn.*, 205 Neb. 611, 289 N.W.2d 192 (1980).

The Bank concedes Hulinsky had a valid lien which attached prior to the recording of its trust deed under the act. It argues that the $30,000 disbursed to Parriotts, and then paid to Hulinsky, should have parity with the $23,000 still due on the original construction contract, and the remainder of the Bank's lien should have priority over any amounts due Hulinsky by reason of the agreed amendments or additions.

This court has not addressed this precise question since the enactment of the Nebraska Construction Lien Act. The right to this type of lien is not new to the laws of this state. With the adoption of 1981 Neb. Laws, L.B. 512, the old mechanic's lien statutes, Neb. Rev. Stat. §§ 52-101 to 52-114, 52-121, and 52-122 (Reissue 1978), were repealed. An examination of these statutes, together with prior acts in sequence, discloses some changes and extensions in some respects, but there has been no change in the designation of persons entitled to a lien under the

act, or the priorities created by the act.

This court has consistently held the attaching date of a mechanic's lien is the date on which materials are first furnished or labor is performed by the person claiming the lien. *Krotter & Sailors v. Pease, supra*; *Gilcrist v. Wright*, 167 Neb. 767, 94 N.W.2d 476 (1959). A supplier of materials to a materialman is not within the class entitled to a lien. *Ideal Basic Industries, Inc. v. Juniata Farmers Coop. Assn., supra*; *Krotter & Sailors v. Pease, supra*.

The statute specifically sets forth the attachment and enforceability of a lien against real estate in favor of a person furnishing services and materials under a real estate improvement contract. § 52-126. The contract price refers not only to the initial contract for services and materials, but also to change orders or extras and altered specifications. The act further provides that if no price is agreed upon by the contracting parties, the contract price means the reasonable value of all services and materials covered. § 52-127(2). Services shall not include financing or activities in connection with financing. § 52-127(9). Where money is furnished to pay for materials, this court has previously ruled that the person who provides those funds cannot be said to have furnished materials. *Barry v. Barry*, 147 Neb. 1067, 26 N.W.2d 1 (1947).

From a review of the trust deed delivered to the Bank by Parriotts, it will be noted that no mention is made as to the purpose of the loan. The evidence reflects that Hulinsky knew the Bank was financing the owner, and, although the testimony is not clear, a review of the Bank's disbursement record reflects that the $30,000 was not disbursed until January 9, 1984, nearly 4 months after Hulinsky had commenced construction.

The general rule adopted by this court is that the materialman and laborer lien has priority over a mortgage recorded subsequent, where it is admitted the purpose of the loan was to provide funds to improve the real estate. *Gabel Lumber Co. v. West*, 95 Neb. 394, 145 N.W. 849 (1914); *Creigh Sons & Co. v. Jones*, 103 Neb. 706, 173 N.W. 687 (1919).

In other jurisdictions, the courts have considered the question of whether the financing party is entitled to parity with the materialman, where the funds are used for purposes of the

construction.

In *Beneficial Finance Co. v. Wegmiller Bender Lbr. Co.*, 402 N.E.2d 41 (Ind. App. 1980), cited by the Bank, the trial court had ruled that the mechanic's lien had priority over all liens subsequently created. On appeal, the finance company asserted that it was entitled to parity with the materialman to the extent that the mortgage money it loaned was used to pay the materialmen and laborers who could have otherwise filed mechanics' liens against the property. The court noted an exception to the general rule announced in a prior case, *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7 (1910), where it ruled that a real estate mortgage executed while a building was under construction was entitled to equal priority with claims of the materialmen and laborers who had, without prior obligations, furnished material and labor after execution of the mortgage and with full knowledge of its purpose and effect.

In *Ward, supra*, the mortgage instrument provided it was executed to enable the owner to pay for the construction completion and to pay outstanding obligations on the improvement.

The court in *Beneficial, supra*, held that Beneficial was not entitled to the extraordinary relief announced in *Ward*. The court in *Beneficial* concluded that notice was the important element.

The ruling in *Beneficial, supra*, supports the general rule that where a materialman furnishes materials for construction before the finance company's mortgage is executed, the finance company is not entitled to priority over the mechanic's lien on the theory that it was entitled to parity to the extent that the mortgage money was used to pay the materialmen and laborers. Nebraska has never adopted the exception noted in *Ward*.

In the court's discussion of the general rule in this jurisdiction, set forth in *Krotter & Sailors v. Pease*, 161 Neb. 774, 74 N.W.2d 538 (1956), citing *Glassco v. El Sereno Country Club, Inc.*, 217 Cal. 90, 17 P.2d 703 (1932) (approving an earlier case, *Godeffroy v. Caldwell*, 2 Cal. 489 (1852)) and *Barry v. Barry, supra*, we stated that where one pays for materials furnished by others, the statute does not extend its protection to those who make the payment.

It has long been the settled rule of this state that "the mechanic's lien law provides exclusively for the security of materialmen and laborers; and one who advances money as a loan, although it is expressly for the payment of materials and labor devoted to the erection of a building, can have no claim to benefits of the law."

*Glassco v. El Sereno Country Club, Inc., supra* at 93, 17 P.2d at 704, quoting *Godeffroy v. Caldwell, supra*.

The Bank lien was clearly subject to the construction lien of Hulinsky.

The decision of the trial court is affirmed.

AFFIRMED.