First National Bank of Auburn, appellant, v. George
C. Pesha et al., appellees.

Filed April 29, 1916.   No. 18725.

Contracts: Building Contract: Bond: Surety and Assignee: Priori-
ties. A surety on the bond of a contractor, given to secure the
payment of all claims for labor and materials furnished in con-
structing a public building, who, after default by the contractor,
has paid any of such claims, has an interest in any final balance
due the contractor on completion of the building superior to that
of the contractor's assignee, notwithstanding the fact that the as-
signment may have been executed and filed prior to payment of
such claims by the surety, and was given in consideration of money
advanced to the contractor and used by him in the construction of
the building.

Appeal from the district court for Nemaha county:
John B. Raper, Judge. *Affirmed.*

*Kelligar & Ferneau,* for appellant.

*Nolan & Woodland, contra.*

Fawcett, J.

Defendant Pesha entered into a contract with the school
district of Auburn for the erection of a high school build-
ing for the contract price of $39,105, and, in compliance
with the provisions of section 3840, Rev. St. 1913, gave
bond for the payment of claims for labor and material,
defendant Equitable Surety Company executing the bond
as surety. A copy of the contract, bond and technical and
general specifications are attached to and made a part of
the petition. The contract bears date March 5, 1912, and
the bond March 12, 1912. On January 8, 1913, Pesha bor-
rowed from plaintiff $1,500, which sum was placed to his
credit on open account. As security for this loan he gave
plaintiff a written order or assignment, addressed to the
board of education of the school district, directing them to

99 Neb.—50

pay to plaintiff the sum named, and to "charge the same to my account as contractor with your district for the construction of the new high school building, now under course of construction, when the building is finished and accepted by you." Plaintiff filed this order with the school district. Pesha defaulted in the performance of his contract, and the school district completed the building. On completion of the building the sum of $2,906.85 remained in the hands of the district as the balance of the contract price. Prior to his default, and subsequent to the assignment to plaintiff, Pesha, for materials furnished and used in the building, executed two assignments, one to John Westover, Incorporated, for $2,342.27, and the other to Elmer Dovel for $2,100. The defendant surety company paid these claims and took assignments thereof. Plaintiff claims priority over the rights of the surety company to the balance of the fund in the hands of the school district, and from a judgment adverse to such claim it appeals.

A public school building cannot be subjected to a mechanic's lien. Section 3840, Rev. St. 1913, requiring the contractor to give a bond, was doubtless enacted for the purpose of protecting mechanics and materialmen. The bond, therefore, became an essential part of the contract entered into by and between Pesha and the school district. The contract provided for estimates by the architect and for payments from time to time, and provided that "the amount to be paid to the contractor shall be eighty-five per cent. (85%) of the amount of such estimate on the presentation of the progress certificate." It also provided: "The final estimate shall be made when the architect is satisfied that the work is entirely and satisfactorily completed, at which time the contractor shall be entitled to the fifteen per cent. (15%) retainer from the progress payments, as balance due him on the contract."

The question to be determined is: Is plaintiff, by virtue of its assignment as security for money advanced to the contractor, entitled to priority over the surety who has by the terms of its bond been required to pay for materials

furnished for the construction of the building? A similar question, involving a bond given in compliance with a federal statute relating to the construction of public buildings, was before the supreme court of the United States in *Hardaway v. National Surety Co.,* 211 U. S. 552, where it is held: "The right of the surety on a bond for performance of a contract given under the act of August 13, 1894, c. 280, 28 Stat. 278, to be subrogated to the contractor's claim for balances due from the Government, is superior to that of one advancing money to the contractor on assignment of such claim."

In that case the court followed *Prairie State Bank v. United States,* 164 U. S. 227, 230, wherein it is said: "Thus the respective contentions are as follows: The Prairie Bank asserts an equitable lien in its favor, which it claims originated in February, 1890, and is therefore paramount to Hitchcock's lien, which it is asserted arose only at the date of his advances. The claim of Hitchcock, on the other hand, is that his equity arose at the time he entered into the contract of suretyship, and therefore his right is prior in date and paramount to that of the bank. . * * * That Hitchcock, as surety on the original contract, was entitled to assert the equitable doctrine of subrogation is elementary. * * * Under the principles thus governing subrogation, it is clear, whilst Hitchcock was entitled to subrogation, the bank was not. The former in making his payments discharged an obligation due by Sundberg for the performance of which he, Hitchcock, was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement and of supposed rights acquired thereunder. The sole question, therefore, is whether the equitable lien, which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising

from and relating back to the date of the original contract, or as taking its origin solely from the date of the advance by him. A great deal of confusion has arisen in the case by treating Hitchcock as subrogated merely 'in the rights of Sundberg & Co.' in the fund, which, in effect, was saying that he was subrogated to no rights whatever. Hitchcock's right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor, the United States, was capable of asserting against its debtor, Sundberg & Company, had the security not satisfied the obligation of the contractors, and one of such remedies was the right based upon the original contract to appropriate the ten per cent. retained in its hands. If the United States had been compelled to complete the work, its right to forfeit the ten per cent. and apply the accumulations in reduction of the damage sustained remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of Sundberg & Company, to the government, to be substituted to the rights which the United States might have asserted against the fund. It would hardly be claimed that if the sureties had failed to avail themselves of the privilege of completing the work, they would not be entitled to a credit of the ten per cent. reserved in reduction of the excess of cost to the government in completing the work beyond the sum actually paid to the contractor, irrespective of the source from which the contractor had obtained the material and labor which went into the building. That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created; and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority."

First Nat. Bank v. Pesha.

This is the general rule. *Labbe v. Bernard,* 196 Mass. 551, 14 L. R. A. n. s. 457, and note. In *Labbe v. Bernard,* it is said (p. 552) : "While it is true that the rights of the sureties to the remedies of the principal do not become complete and are incapable of present enforcement until they shall have discharged their principal's obligation, yet their right becomes an inchoate one as soon as they have entered into the relation of suretyship; and their equitable assignment of their principal's rights and remedies, when completed by their performance of his obligation, relates back, as against each other and their principal, to that earlier time. (Citing cases). And all persons who have in the meantime received any securities or payments from either party to the principal contract, with notice of the facts and of the surety's responsibilities and consequent rights, must in equity hold them for his benefit."

It is insisted that, since the money loaned Pesha by plaintiff was used to pay expenses incurred in constructing the building, the surety company has received the benefit of such payments, liability on the bond being reduced to that extent. Plaintiff was under no obligation to advance the money, and, as shown by the above authorities, in doing so it acted voluntarily. It is not entitled to be subrogated, as against the defendant surety company, to the rights of Pesha's creditors to whom the money was paid.

AFFIRMED.

SEDGWICK, J., not sitting.