FREMONT FOUNDRY & MACHINE COMPANY ET AL., APPEL-
LANTS, V. SAUNDERS COUNTY ET AL., APPELLEES.

285 N. W. 115

FILED APRIL 7, 1939. No. 30462.

*Clarence T. Spier* and *Fred H. Richards, Jr.*, for appel-
lants.

*Paul F. Good, Hendricks & Kokjer, Crofoot, Fraser, Con-
nolly & Stryker* and *Young & Williams, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

In this action the plaintiffs, materialmen, asked the court
to declare and enforce an equitable lien upon certain in-
debtedness of the defendant Saunders county to the Central
Bridge & Construction Company. Certain claims of the
construction company had been assigned to the defendants,
First National Bank, of Wahoo, Nebraska, hereinafter
called the bank, and Wachob Bender & Company. Plain-
tiffs claim a lien superior to the assignments. The trial
court held against the plaintiffs, and plaintiffs appeal.

The case arises out of the following set of facts, either
admitted by, or properly determined from, the pleadings
and evidence.

On May 18, 1936, the defendant Saunders county en-
tered into an annual bridge contract with the Central Bridge

& Construction Company (hereafter called the construction company) wherein the construction company agreed to furnish all labor and material necessary to erect and complete such bridges, bridge material, and bridge work, for the unit prices set forth in the contract, as the defendant county might require.

The contract is on a standard form prepared by the state of Nebraska. It provided that from time to time the county should pay to the construction company estimates for materials furnished and labor performed, as in the judgment of the county might be right and proper. The contract had attached thereto a bond, wherein the construction company was principal, and one E. G. Risk was surety. Risk appears to have been a managing officer. of the construction company. The bond in the sum of $2,000 does not meet the statutory requirement as to sureties. It is conditioned, among other things, to "pay off and settle in full with the person or persons entitled thereto all accounts and claims that may become due by reason of laborers' or mechanics' wages, or for materials furnished, or services rendered." There is no provision in the contract permitting the retention of any sums which may be due the contractor in order to pay the claims of materialmen or laborers. There is no privity of contract between the county and the plaintiffs, no statute requiring the county to pay the plaintiffs, or to act as trustee of the funds to be paid for the work, and no agreement to pay the plaintiffs if the construction company fails to do so.

The construction company performed work and furnished materials of a value in excess of $58,000. The county was unable to make payments promptly to the construction company due to a lack of funds. The construction company at various times filed claims which were approved by the county engineer, audited by the county clerk, and found .correct. Notations were made thereon as to the probable time when warrants would issue.

On September 11, 1936, and November 28, 1936, the construction company assigned claims, so audited and certi-

fied, to the defendant, First National Bank, of Wahoo, and that bank paid the construction company value therefor, subject to a discount for interest. The defendant, Wachob Bender & Company, likewise purchased claims on January 11, 1937.

The three plaintiffs in this action filed claims with the county for unpaid balances due from the construction company for materials furnished. The Nebraska Bridge Supply & Lumber Company filed its claim February 20, 1937, for lumber sold and delivered to the construction company. The plaintiff, Omaha Steel Works, filed its claim February 27, 1937, for the sale price of a bridge in the sum of $1,-063.21. The Fremont Foundry & Machine Company filed its claim March 6, 1937, for material furnished in the sum of $1,542.30. The construction company was declared bankrupt on March 9, 1937.

As a result of the filing of these claims by the materialmen, the defendant county refused to issue warrants for two of the assigned claims, one being to the bank in the sum of $8,004.01, and the other being to Wachob Bender & Company in the sum of $4,339.30.

The construction company had purchased materials from the three plaintiffs at different times. Charges on their records were made against the construction company, and it was not until the construction company became slow in its payments, and apparently insolvent, that the plaintiffs filed these claims with the county. The plaintiffs sold the materials to the construction company upon the faith and credit of the construction company, and not upon the credit of the county, or in reliance upon payment from the county.

Of the claim of the Fremont Foundry & Machine Company for approximately $1,540, not to exceed $963 of the materials so sold to the construction company went to the county under its annual contract, and the remainder of the materials involved in that claim appear to have been on hand as a part of the assets of the construction company at the time it went into bankruptcy.

The material furnished by the Omaha Steel Works appears to have been used by the construction company under its annual contract with the county. Of the lumber furnished by the Nebraska Bridge Supply & Lumber Company, approximately 50 per cent. of the amount claimed was for material furnished either prior to the date of the annual contract, or sold subsequently to the construction company, and not traced to any county work under the annual contract.

There was also one car-load of lumber sold by the plaintiff, Nebraska Bridge Supply & Lumber Company, to the construction company, which was in turn sold to the county, for which no claim had been filed or assignment made, and which, under the holding of the district court, is a claim that vested in the trustee in bankruptcy of the construction company.

Plaintiffs do not claim that they had a contract with the county, and do not assert a claim against the county, but rather assert an equitable lien against the funds due from the county; that their lien "attaches by operation and application of the law and rules of equity;" and that, as materialmen, they have an original and continuing equitable priority to any funds "now in or to be in the hands of the county" for payment to the contractor; and that such funds are impressed with a prior and equitable lien in their favor as unpaid materialmen.

There is no evidence in the record that the county has a fund available for the payment of the two assigned claims. Hence, the plaintiffs' claim is not a claim upon a certain existing fund, but a claim upon an indebtedness of the county to the contractor, which has been assigned to certain of the defendants.

Does the law give a lien to the materialmen upon the debt owing by the county where the law does not give a lien upon the property itself because of which the debt of the county arose?

The answer to plaintiffs' contention is found in the statutes of this state as construed by this court.

In 1871, this court in the case of *People v. Butler,* 2 Neb. 5, had before it an original application for a writ of mandamus to compel commissioners who were charged with the erection of a state building to draw a warrant upon the state treasurer for money due a subcontractor from the contractor.

The subcontractor insisted that he had a lien upon the *funds* set apart by the legislature for the construction of the building, and that the agents of the state were obliged to recognize his claim and draw a warrant therefor. This court held that the mechanics' lien law did not apply, and that "The commissioners are not bound to recognize the demands of any person *other than the one with whom the contract was made."* (Italics ours.) This court then stated: "To adopt any other rule would be productive of infinite mischief, and lead to inextricable confusion, in the prosecution of work upon our public buildings." While the reason there given, to wit, that the state could not be brought into court without its consent, might not be applicable to the case at bar, yet the fact remains that in that action this court refused to order money paid to a subcontractor from funds set apart for the construction of a public building.

This court in 1874, in the case of *Ripley v. Gage County,* 3 Neb. 397, held that the mechanics' lien law of the state did not apply to the erection of public buildings for the use of a county, and stated: "The legislature never intended that county buildings should be subject to sale by judicial process, no matter what the character of the demand may have been upon which the judgment was rendered, and that they are necessarily as completely withdrawn from the operations of the mechanics' lien law, as if they had been expressly excepted by the most positive and unambiguous words. But should we hold otherwise, it would follow, as a necessary sequence, that in case of a recovery by a contractor under the provisions of the lien law, the building in question could be seized and sold for its satisfaction, *for it cannot be said that the lien exists unless the structure may be sold to satisfy it."* (Italics ours.)

This court in 1882, in the case of *State v. Eberly,* 12 Neb. 616, 12 N. W. 96, held that a county is not subject to process of garnishment. Garnishment is now allowed against the state and local subdivisions of government, including counties, in cases involving wages. Comp. St. 1929, sec. 20-1012.

In *White Lake Lumber Co. v. Russell,* 22 Neb. 126, 34 N. W. 104, decided in 1887, this court said:

"In the consideration of this part of the case it must not be forgotten that the lien of mechanics and materialmen upon a building or improvement in the construction of which labor or material is used, is purely a creature of the statutes, and did not exist either at common law or *in equity* (Maxwell's Pleading and Practice, 700), and must, therefore, be considered with reference to the statute, *as well in the manner of its enforcement* as in its creation." (Italics ours.)

In *Sample v. Hale,* 34 Neb. 220, 51 N. W. 837, this court held that the state was charged with a moral duty to protect laborers and materialmen as far as possible; that the provision in a contract by which the contractor agreed to pay in full all claims for labor and materials was a proper requirement; and that the sureties were liable for the performance of that part of the contract. However, this court held that the building, being one erected by the state, was excepted from the mechanics' lien law.

Plaintiffs cite the above case in support of their proposition that they should have an equitable lien. They quote that part of the opinion which states the moral duty of the state. They omit that part which holds that a mechanics' lien cannot be had, but that suit may be had upon the bond.

The case of *Perkins v. Butler County,* 44 Neb. 110, 62 N. W. 308, involves a situation distinctly similar to the one at bar. In that case, Butler county contracted with a partnership for the erection of a courthouse. During the performance of the contract, the partnership was dissolved, and one partner continued the contract. However, it was agreed between the partners that the firm name might be used in

the completion of the work. The continuing partner borrowed $4,000 from a bank, and Perkins and Spelts, plaintiffs in the case, signed the note as joint makers.

The contract for the construction work provided for the reservation of 15 per cent. of the construction cost, to be paid the contractor at the completion of the work. The continuing partner, using the firm name, delivered to Perkins and Spelts a written instrument addressed to the board of supervisors of Butler county, directing them to pay Perkins and Spelts the reserved amount. The assignment was filed with the county clerk in December, 1890. The courthouse was completed May 28, 1891, and there was at that time a balance of $8,344 due the contractor. At the time of the completion of the work, materialmen and laborers were given orders on the county. Perkins and Spelts paid the note in July, 1891, and brought an action against Butler county, the continuing partner, and the laborers and materialmen, alleging that they were entitled to funds in the hands of the county prior to the materialmen and laborers, and praying for judgment therefor.

The county answered, set up the facts, and prayed an adjudication as to whom the money should be paid. The laborers and materialmen filed answers, claiming that the loan to the continuing partner was a personal one, and not a partnership matter, and asked that they be decreed to have liens upon the funds superior to Perkins and Spelts.

This court stated: "It is suggested in argument that the cross-petitioners are entitled to priority because their work contributed to the creation of the fund, but this view is not tenable. Our mechanic's lien law does not apply to the construction of a courthouse. *Ripley v. Gage County,* 3 Neb. 397; *Sample v. Hale,* 34 Neb. 220; *Lyman v. City of Lincoln,* 38 Neb. 794. *In the absence of a statute creating such a lien one obtains no specific lien upon a fund merely because his industry assisted in creating it.*" (Italics ours.)

The court further stated: "We, therefore, have two rules well established. The first that the assignment to the plaintiffs was one which, in equity, is valid, and would have

priority over the claims of the cross-petitioners if all the claims emanated from the same source, and upon the same account. Second—That one member of an insolvent partnership, especially after dissolution, may not dispose of partnership property to the exclusion of partnership creditors."

After having held that the materialmen did not have a lien, this court then held that the $4,000 loan to the continuing partner, which the plaintiffs paid, was an individual debt; that the materialmen and laborers had partnership debts; that the partnership assets should be applied first to the payment of the partnership indebtedness; and, on that basis, denied plaintiffs the priority prayed.

The decision in the case of *Perkins v. Butler County, supra,* was finally based upon a principle of law not involved herein, but the finding above quoted appears to have been necessary to the conclusion reached.

The case is important not only because of the holding that, in the absence of a statute, laborers and materialmen did not secure a lien upon a fund merely because their industry had assisted in the creation of the fund, but likewise, because it held that the assignment in that case gave the plaintiffs a prior right over the claims of the cross-petitioners if the claims emanated from the same source and upon the same account.

That case is in many ways a stronger case for the laborers and materialmen than is the case at bar, for there the materialmen had written orders directing their payment out of the particular fund involved. In the case at bar, the materialmen have no such orders. In the *Perkins v. Butler County* case, the materialmen and laborers were able to trace all of their labor and material into the construction of the courthouse. In the instant case, two of the plaintiffs are unable to make such a showing. In that case, the materialmen and laborers are not shown to have had any dealing whatever with the contractor other than on the courthouse, while, in the instant case, the plaintiffs are shown to have dealt generally with the contractor, to have

extended credit to the contractor, and two of the three plaintiffs claim a lien in part for materials not furnished to the defendant Saunders county under the contract.

In the case at bar, the claims emanated from the same source, to wit, the construction company, and upon the same account, to wit, the indebtedness of Saunders county to the construction company.

An examination of the record in the *Perkins v. Butler County* case reveals that there a bond was given for the payment of material and labor, and that the bondsmen were insolvent. In that regard, the *Perkins* case and the case at bar are similar.

The case of *School District v. Thomas*, 51 Neb. 740, 71 N. W. 731, arose out of the following set of facts. One Smith contracted with the school district to erect two schoolhouses. Thomas was the subcontractor doing the excavating, stone, and brick work. Smith abandoned his contract. The sureties undertook to complete the work, but did not, and the district finally completed the work. Thomas worked for the district in completing the job.

Thomas sued for the balance due for labor and materials under the original contract, for the amount due while the bondsmen of Smith were in charge of the erection of the building, and while the district had the management. During the progress of the work under the contract, estimates had been given by the architect to the contractor for services performed and material furnished by the subcontractor. One question was: Could the subcontractor maintain the portion of his demand of payment for materials and labor furnished under the original contract wherein he was a subcontractor?

This court stated: "It cannot be said that he was entitled thereto because of any contract with the district, for he had none with it. His contract was with Smith, the original contractor. By the terms of the contracts defendant in error was to receive payment for his services and materials from the contractor, and the contractor was to be paid by the school district. That a party contracts with

one to perform labor and the one employs another to do the work does not authorize the latter after performance as a matter of right to demand payment of the original party employer and on refusal maintain suit for it. Clark, Contracts, pp. 508-511. Neither can it be said that the retention of the amount of the estimates as they were made, presented, and in part paid, raised the right in the subcontractor to demand any part of such sum as his due because it had its source in labor performed or materials furnished by him; nor did the district become a trustee for the subcontractor and thus a right originate by which the subcontractor became vested with a claim against the district for such sum."

This court then held that Thomas was not entitled to recover from the district for that part of the work done under the original contract.

By the act of the legislature, passed in 1873 (General Statutes of Nebraska, 1873, p. 232, ch. 13, sec. 6), it was provided that, when a judgment was rendered against a county, an execution should not issue upon the judgment, but that the county should levy a tax and pay the judgment. While that act was repealed in 1879 (See Laws 1879, p. 393), the policy of the law declared therein, to wit, that an execution should not issue against a county, has not been changed.

Under the provisions of section 77-1809, Comp. St. 1929, the legislature has provided a method for the payment of judgments against a county, showing that the policy of this state has been that a judgment against a county or an instrumentality of the state should not be a lien against the specific property of the governmental organization.

In 1889 the legislature passed an act entitled "An Act to secure the payment of mechanics' and laborers' wages on all public buildings where the provisions of the general mechanics' lien laws do not now apply." Laws 1889, ch. 28. In 1913 (Laws 1913, ch. 170) that act was amended by the insertion therein of certain provisions to secure the payment of materialmen, who furnished material for the con-

struction of public buildings. The act as amended became section 3840, Revised Statutes of Nebraska for 1913, and now is section 52-118, Comp. St. 1929, which, as it now exists, is as follows:

"It shall be the duty of the board of public lands and buildings, county boards, the contracting board of officers of all cities, villages, and school districts and all public boards now or hereafter empowered by law to enter into a contract for the erecting and finishing, or the repairing of any public building, bridge or other public structure *or improvement; and any officer or officers so empowered by law to enter into such contract,* to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of their wages *and materialmen who furnish material for said work have no lien to secure payment for material furnished in said work,* to take from the person, persons, firm or corporation to whom the contract is awarded a bond *in a sum not less than the contract price* with at least two good and sufficient sureties, or in lieu thereof, by one surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed *and for the payment for material which is actually used* in the erecting, furnishing, or repairing of the building or in performing the contract. Such bond shall be to the board awarding the contract, and no contract shall be entered into by such board until the bond herein provided for has been filed with and approved by said board. Such bond shall be safely kept by the board making the contract, and may be sued on by any person entitled to the benefit of this chapter. The action shall be in the name of the party claiming the benefit of this chapter."

We have italicized the above quoted statute to show the 1913 amendments which are material to the question involved here.

It was not until 1913 that the legislature of this state included materialmen within the protection of the bond provided for in this statute, and then only "for the payment

for material which is *actually* used in the erecting, furnishing, or repairing of the building or in performing the contract."

In *First Nat. Bank v. Pesha*, 99 Neb. 785, 157 N. W. 924, the court stated: "A public school building cannot be subjected to a mechanic's lien. Section 3840, Rev. St. 1913, requiring the contractor to give a bond, was doubtless enacted for the purpose of protecting mechanics and materialmen."

In *Nye-Schneider-Fowler Co. v. Roeser*, 103 Neb. 614, 173 N. W. 605, this court stated:

"Before our statute (Rev. St. 1913, sec. 3840) was enacted in 1889 (Laws 1889, ch. 28), the laborer or materialman who furnished labor or material for the erection of a public building *had no protection* except the responsibility of the contractor, and such bond as the contractor and the public officials might see fit to provide. A laborer who was in the habit of relying upon the mechanics' lien law frequently found that he had worked upon public buildings without compensation. Then the statute was enacted requiring absolutely that one who contracted to build a public building which would not be subject to mechanics' liens must give bond to pay laborers and materialmen."

(The judgment in this case was set aside by opinion found in 104 Neb. 389, 177 N. W. 750, but the reasons therefor do not relate to the statement just quoted.)

This court in *West v. Detroit Fidelity & Surety Co.*, 118 Neb. 544, 225 N. W. 673, stated: "The chapter containing the above section" (Comp. St. 1929, sec. 52-118) "includes the mechanics' lien law, and the argument is that, inasmuch as plaintiffs are not entitled to a mechanics' lien, they have no right of action upon the bond. We think the contention unsound. The very purpose of the section in question was to protect persons who were not entitled to mechanics' liens, and this purpose would be entirely defeated if this construction were adopted."

Materialmen and laborers, in order to secure liens, are required by sections 52-102 and 52-103, Comp. St. 1929,

to file their claims in a certain manner and within a limited time. To hold that these plaintiffs are entitled to a lien would be to give to parties, not entitled to a statutory lien, the advantages of a statutory lien, without the burden of any of its conditions, and would create a lien that the legislature has not provided.

"In the absence of an express contract creating it, the lien which a materialman or mechanic may become entitled to depends solely upon the statute for its existence. It is a preference which he may secure if he proceeds in a particular way and fully complies with the statutory requirements upon the subject, and not otherwise." *Volker-Scowcroft Lumber Co. v. Vance*, 32 Utah, 74, 88 Pac. 896.

The policy of this state has been to deny materialmen and laborers a lien upon public buildings and public funds, and in the case of public construction work, the policy declared by the legislature has been to require a bond for the protection of materialmen and laborers.

It is true in the case at bar that a bond with the sureties required by the statute was not given, and that at the time of trial the one bondsman was insolvent. That element is in many of the decided cases. However, that does not create a right in the plaintiff not otherwise existing.

In *Paxton & Vierling Iron Works v. Village of Naponee,* 107 Neb. 784, 186 N. W. 976, the village board failed to require a bridge contractor to give the statutory bond. The materialmen sued the city, and its four trustees individually, for damages for failure to exact the bond. This court said: "If any liability did exist, either on the part of the village or of the persons who were trustees, it could arise only where the materialmen had furnished material for the construction of the bridge, relying upon a bond for his protection, and where he had suffered damage by failure of the contractor to pay for the material furnished. The statute required the bond to be filed, and plaintiff knew, or by exercise of ordinary diligence could have known, that no bond had been taken and filed. Plaintiff was chargeable with notice that no bond had been taken, and had no

right to impose liability on the village or the members of the village board. When it knew, or could by the exercise of ordinary care have known, that no bond was given, and voluntarily furnished the material, it will be presumed that it furnished the material solely upon the credit of the contractor."

The plaintiffs herein are not entitled to a mechanics' lien; the legislature contemplated that the provision of the above quoted statute requiring a bond was for the purpose of protecting materialmen and laborers, and that is the only special protection that is afforded to materialmen and laborers, who furnish materials and labor to contractors doing public construction work under contracts with agencies of government of this state.

The following decisions from other jurisdictions support the conclusion we have reached in this case: *Guise v. Guise,* 116 N. J. Eq. 590, 174 Atl. 681; *Aetna Trust & Savings Co. v. Nackenhorst,* 188 Ind. 621, 122 N. E. 421; *Reinhart & Donovan Co. v. Board of Commissioners,* 70 Okla. 127, 173 Pac. 848; *Adamson v. Paonessa,* 180 Cal. 157, 179 Pac. 880; *Fairbanks, Morse & Co. v. Town of Cape Charles,* 144 Va. 56, 131 S. E. 437; *E. I. DuPont De Nemours & Co. v. City of Glenwood Springs,* 19 Fed. (2d) 225; *Johnson v. Flynn,* 179 Ark. 253, 15 S. W. (2d) 327.

Plaintiffs argue that the case of *First Nat. Bank v. Pesha, supra,* is controlling in this case, and in their favor. Analysis of that case reveals that the school district of Auburn entered into a contract with Pesha on March 5, 1912, for the erection of a school building; that the defendant surety company executed the bond required by statute on March 12, 1912. On January 8, 1913, or ten months later, Pesha borrowed $1,500 from the plaintiff bank, and as security for the loan gave the plaintiff bank a written order or assignment addressed to the board of education of the school district, directing them to pay the plaintiff the sum named, and to charge it against his account as contractor, when the building was finished and accepted. The order was filed with the school district. Pesha de-

faulted. The school district completed the contract. There remained payable at the date of the completion $2,906.85 as the balance of the contract price. Prior to his default, Pesha purchased materials in the sum of $4,400 from two materialmen. The defendant surety company paid those claims and took assignments thereof. (The transcript in this case reveals that the payment of the claims by, and the assignments to, the surety occurred subsequent to the bringing of the action.) The plaintiff claimed priority over the rights of the surety company.

This court held that section 3840, Rev. St. 1913, requiring the contractor to give a bond, was doubtless enacted for the purpose of protecting mechanics and materialmen, and that the bond therefore became an essential part of the contract entered into by and between Pesha and the school district. The court stated the question to be determined as follows: "Is plaintiff, by virtue of its assignment as security for money advanced to the contractor, entitled to priority over the surety who has *by the terms of its bonds* been required to pay for materials furnished for the construction of the building?" (Italics ours.)

This court there cited the case of *Prairie State Nat. Bank v. United States,* 164 U. S. 227, 17 S. Ct. 142, in which they state the question to be decided depended upon whether the surety's right of subrogation arose "from and *related back to the date* of the original contract, or whether it took its origin solely from the date of the advances by the surety."

This court further quoted from the case of *Labbe v. Bernard,* 196 Mass. 551, 82 N. E. 688, 14 L. R. A. n. s. 457, as follows: "While it is true that the rights of the sureties to the remedies of the principal do not become complete and are incapable of present enforcement until they shall have discharged their principal's obligation, yet their right becomes an inchoate one *as soon as they have entered into the relation of suretyship;* and their equitable assignment of their principal's rights and remedies, when completed by their performance of his obligation, *relates back,* as against each other and their principal, *to that earlier time."* (Italics

ours.) The case rested upon the contractual rights and obligation of the surety company under the bond.

The basis of the decision was that the surety company had entered into its obligation prior to the date of the assignment to the plaintiff bank, and that, when the surety subsequently thereto met its obligation as surety and paid claims, its rights as against the amount due on the contract *related back* to the date of the original contract, and, hence, the rights of the surety company were superior to the subsequently acquired rights of the plaintiff bank.

Next, it was further insisted in the *Pesha* case by the plaintiff that, since the plaintiff's money was used to pay the expenses of the construction of the building, the surety company had received the benefits of such payments, and the liability on the bond was reduced to that extent. This court stated: "Plaintiff was under no obligation to advance the money, and * * * in doing so it acted voluntarily."

It is clear that the *Pesha* case is not authority for the contention of the plaintiffs in this case. Quite obviously, the plaintiffs were volunteers in selling material to the construction company, and, just as obviously, they had no contractual rights or obligations that would date back in such a way as to give them a prior claim to these funds over the assignee defendants.

We have examined the other cases upon which plaintiffs' contention is based. Plaintiffs cite a number of decisions of the United States courts, such as *United States Fidelity & Guaranty Co. v. Sweeney,* 80 Fed. (2d) 235. There the statement is made: "Laborers and materialmen, however, have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors."

A similar rule is announced in *American Surety Co. v. Westinghouse Electric Mfg. Co.,* 75 Fed. (2d) 377. However, the court in that case stated:

"*In the absence of a statute on the subject, furnishers of labor or material to a contractor have the legal status of general creditors.* Before the enactment of any federal

statute on the subject, it was not unusual for the government to recognize the existence of a moral duty to protect furnishers of labor or material for a public work against dishonest or reckless contractors by requiring the insertion in a contract for such work of a provision requiring payment by the contractor of amounts owing by him to furnishers of labor or material for the work contracted for, or entitling the government to withhold payments to the contractor if he failed to pay promptly those who furnished labor and materials. *Greenville Sav. Bank v. Lawrence* (C. C. A.) 76 Fed. 545. It appears from decisions referred to below that the government's observance of that duty in practical and effective ways was the precursor of judicial recognition of an enforceable equitable right of unpaid furnishers of labor or materials for that work in or to a part of the contract price thereof remaining in the possession of the government after the completion of that work by the contractor." (Italics ours.)

The cases cited by plaintiffs herein are among those referred to by the court in the above case.

The policy adopted by the federal government which was the precursor of judicial recognition of an equitable lien by the federal courts has not been the policy of this state, and it was not the policy of the county in the instant case; hence, there is no basis for the adoption of the federal rule in Nebraska.

Plaintiffs likewise cite *Prairie State Nat. Bank v. United States, supra.* That case, and other similar cases, was considered by the court in *Adamson v. Paonessa, supra,* and the following comment was made, which distinguishes that case, and other similar cases, from the case at bar:

"Right here also lies the difference between the present case and the line of authorities cited by appellant's counsel, beginning with *Prairie State Nat. Bank v. United States,* 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. In those decisions the facts are essentially the same as in this, with the exception that either by statute or by the contract itself, a fund was in effect reserved for the benefit of ma-

terialmen and laborers whom the contractor might fail to pay. In other words, the materialmen and laborers had a right as against a certain fund in addition to any recovery against the contractor or his surety. Under such circumstances if the surety paid their claims he would be subrogated to their rights against such fund. Such, however, is not the case here, as there is no fund against which the materialmen and laborers have a right."

` We therefore hold that the decree of the district court denying the plaintiffs the relief sought was correct, and that decree is

AFFIRMED.