H. J. PETERSEN ET AL., APPELLEES, V. CITY OF OMAHA, APPELLANT.

FILED JULY 17, 1930. No. 27311.

John F. Moriarty, T. J. O'Brien and B. J. Boyle, for appellant.

L. J. TePoel and W. H. Herdman, contra.

Heard before ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ.

ROSE, J.

This is an action by contractors to recover a balance due them on their contract to construct Grace street storm sewer in Omaha for $124,029.20. H. J. Petersen and James Jensen were contractors and are plaintiffs. The city of Omaha is defendant. Claims for the unpaid balance due on the contract were presented by plaintiffs to the city council and disallowed. They appealed to the district court where a judgment was entered in their favor for $2,801.49. This sum is composed entirely of interest amounting to $342.33 on delayed payments as the work progressed and of an item, listed in the contract under the head of "Extras," for sheeting lumber left in the trench by order of the city engineer, the amount of the latter item as allowed by the district court being $2,052.24 for 34,204 feet at $60 a thousand, board measure, and interest thereon in the sum of $406.92 from November 1, 1926, to September 1, 1929, or $2,459.16, principal and interest. From the judgment in favor of plaintiffs for $2,801.49, defendant has appealed.

The allowance of interest is challenged by defendant as erroneous. On the other hand, plaintiffs take the position that they were entitled to recover interest on account of delays in payments when due after the sewer was completed and accepted, citing, among other cases, *Murphy v. City of Omaha*, 33 Neb. 402.

The contract was executed September 19, 1925, and the sewer was completed October 25, 1926. The contract does not contain in direct terms a provision for the payment of interest. On estimates plaintiffs were entitled to payments as the work progressed. Measured by stipulated compensation for completion of the sewer itself, there was a balance of $33,722.45 due plaintiffs October 25, 1926. Defendant made estimates and corresponding payments therefor as follows: January 7, 1927, $15,093.90; September 12, 1927, $11,935.43; September 19, 1927, $6,693.12; total, $33,-722.45, excluding interest. For delays in making payments during the progress of the work, were plaintiffs entitled to interest? Prior to the payments made, was the city in default within the meaning of the statutes creating a liability for interest and entering into the contract for the improvement? While the sewer was completed and accepted October 25, 1926, plaintiffs had not then fully performed their contract, which must be considered in its entirety. It contained provisions requiring them to protect the city against damages resulting from excavations and authorized the city to indemnify itself by temporarily withholding payments. As a result of the excavating for the sewer, the surface of a paved street fell below the established grade. Street car tracks were injured. Curbs and sidewalks were disturbed. Owners of adjacent property complained of injuries. Claims for damages were presented to defendant. To ascertain the extent of such damages the city conducted an official investigation and its officers made a tentative estimate of $7,000 to replace the pavement and of $11,000 to cover the claims of property owners. Funds in control of the city for payment of the contractors were released as the claims for damages were paid, adjusted or abandoned. Though plaintiffs appear to have been diligent in adjusting

such claims, their own testimony shows that they commenced to restore the pavement April 30, 1927, and did not complete it until June 20, 1927. There is testimony tending to show that the broken pavement was not completely restored until September 2, 1927, just 17 days before the final estimate of $6,693.12 due plaintiffs was made. It may fairly be inferred that the city did not previously know the exact amount payable to plaintiffs under the contract as a whole in view of its right to withhold payments as contractual indemnity for damages. The exact amount which the city should release for payments to plaintiffs was not ascertainable while claims for unliquidated damages were pending. There is nothing to show bad faith of defendant in temporarily withholding payments for indemnity. There was no evidence of unreasonable delay. In the meantime the city was not in such default as creates a liability for interest on delayed payments. With the exception of the final estimate, plaintiffs accepted all payments as the work progressed without making any demand for interest. The law applicable has been stated as follows:

"It may be stated as a general rule, however, that interest is not allowed on unliquidated damages or demands, for the reason that the person liable does not know what sum he owes, and therefore can be in no default for not paying. The damages in such cases are generally of an uncertain quantity, depending upon no fixed standard, and can never be made certain except by accord or verdict or decree; and hence, where this is the condition, they are not allowed, either in actions arising from a breach of contract, or on tort." 8 R. C. L. 533, sec. 86. See, also, note in 3 A. L. R. 809-819.

*Murphy v. City of Omaha*, 33 Neb. 402, cited by plaintiffs is not controlling on this feature of the present case. Plaintiff therein had fully performed the contract. The amount then due was definitely known. The city had no right to withhold payments for indemnity against damages. There was no justification for non-payment or delay upon completion and acceptance of the work.

The conclusion is that the trial court erred in allowing interest to the extent of $342.33 on the delayed payments mentioned, excluding the claim for lumber.

Was the claim for sheeting lumber left in the trench by order of the city engineer a valid obligation of the city in addition to the contract price of $124,029.20 for the construction of the sewer? The bid of plaintiffs was made on a form which the city required them to use and is a part of the contract. Under the separate head "Extras," following a line calling for a bid on lumber per thousand feet, board measure, the entry was "60," written in a column under "dollars." Bids were specifically required on every item. This bid was accepted as made. The specifications are also parts of the contract and one of them contains printed matter in the following language:

"Sheeting left in permanently under direction of the city engineer, and only such, will be paid for at the price bid."

On a blue print constituting a portion of the plans for the improvement, and also a part of the contract, are the following entries on the margin:

"Sheeting and Bracing: No extras will be allowed for sheeting and bracing left in the sewer trench and in tunnel.

"Bracing that may be required in the tunnel shall be included in the price bid per lin. ft. of sewer and no extras will be allowed for same or for the placing of same."

Defendant contends that the foregoing wording copied from the plans is in writing and that the written provisions introduced by the catchwords "Sheeting and Bracing" prevail over inconsistent terms of the printed matter quoted from the specifications. In other words, the contention is that expressions disallowing, as extras, payments for sheeting and bracing left in the trench and including the price therefor in the bid for constructing the sewer by the lineal foot prevail over the accepted bid for such lumber at $60 per thousand feet and also prevail over the printed specification that payment therefor will be made on the basis of the price bid for extras. In this connection defendant invokes the following statutory rule:

"When an instrument consists partly of written and partly of printed form, the former controls the latter, where the two are inconsistent." Comp. St. 1922, sec. 8850.

Within the meaning of the statute, it is at least questionable whether the terms appearing on the blue print surpass other printed matter in dignity and effect. There is nothing in the record to indicate that plaintiffs ever saw the original manuscript reproduced in the form of the blue print. The quoted stipulations thereon are printed, not written. The blue print itself, not the original drawing or writing, is a part of the contract executed by the parties. It is unnecessary, however, to pass on this question, because the solution is found in well-settled principles of law applicable to the construction of written instruments. The entire contract should be considered in giving effect to doubtful or ambiguous terms. The provisions giving rise to controversy should be viewed in the light of the entire instrument to reconcile seeming inconsistencies in segregated terms. Mutual interpretation of the parties as evidenced by what they did under the contract may be considered. Fair dealing and intention, if discernible from the entire instrument, may also be considered.

The contractors were required to cut a trench 40 feet deep. In making it they used 34,204 feet of lumber and the city engineer ordered them to leave it there, as he was permitted to do under the contract. At the price bid the amount of the claim therefor was $2,052.24. These facts are undisputed. By lineal foot for the sewer plaintiffs could not make a conservative, intelligent bid for lumber involuntarily left in the trench, because they had no means of knowing in advance how much the city engineer would direct them to leave. In that situation they were required by the city to bid for the lumber sheeting by the thousand feet, board measure, under the head of extras and their bid was accepted and made a part of the contract. After they were directed by the engineer to leave the lumber in the trench, the city calculated the amount thereof, thus indicating an interpretation that payment should be made accordingly. Otherwise the city thus performed an idle task,

since the amount of the lumber left in the trench was immaterial, if payment therefor were included in the bid for construction of the sewer by the lineal foot. The interpretation now invoked by defendant would eliminate from the contract the accepted bid by plaintiffs for lumber under the head of extras and would also strike out the specification for the payment of the lumber at the price bid. Properly construed there is no inconsistency between the terms in controversy. The provisions upon which defendant relies apply alone to sheeting and bracing voluntarily left in the trench by the contractors, while the specification challenged as inconsistent applies to lumber left therein by order of the city engineer. This construction makes the contract consistent in all its parts, gives effect to every provision, is in harmony with business rectitude and conforms to fairly expressed intentions as shown by mutual understanding of the parties during the progress of the work.

It was the duty of the city to include in its final estimate September 19, 1927, the claim of plaintiffs for $2,052.24 and to pay the same on that date. The amount due plaintiffs for lumber left in the trench under the direction of the city engineer was then definitely ascertainable under the terms of the contract which was fully performed on their part. They are therefore entitled to interest from that date. *Murphy v. City of Omaha*, 33 Neb. 402.

The judgment of the district court is reversed and the cause remanded, with directions to enter a judgment in favor of plaintiffs and against defendant for $2,052.24 with interest thereon at the rate of 7 per cent. per annum from September 19, 1927; the parties to pay their own costs in the supreme court.

REVERSED.