HANS JENSEN, APPELLANT, V. J. VICTOR ROMIGH ET AL., APPELLEES.

274 N. W. 199

FILED JUNE 22, 1937. No. 29972.

*Shuman & Overcash,* for appellant.

*Hoagland, Carr & Hoagland* and *J. V. Romigh, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

LIGHTNER, District Judge.

In this case the district court directed a verdict against the plaintiff and he appeals. His suit was for $4,500 balance of $5,000 which he claims that he loaned to defendants on July 28, 1925. Defendants admit getting the money, but claim that the transaction by which they got it constituted the plaintiff and the two defendants a limited partnership. The court evidently took the position that exhibit 19, hereinafter set forth, made the parties partners and prevented plaintiff from recovering in an action at law.

Exhibit 19, above referred to, is as follows:

"July 28, 1925.

"This agreement made this 28th day of July, 1925, by and between the partnership of Romigh and Heffner and Hans

Jensen whereby it is agreed that the said Hans Jensen shall become a limited partner of the said firm upon the payment to the said firm of the sum of $5,000 in cash, as follows: $4,200 in cash paid this day; $400 in cash payable August 1, 1925; $400 in cash payable Nov. 27, 1925.

"It is hereby agreed that this agreement shall run one year from August 1, 1925, and shall terminate August 1, 1926, and the terms of this agreement are that the said two partners do agree with Hans Jensen that he shall obtain out of the profits of the partnership business in the sale of automobiles of the said firm the sum of 5% of the said investment each half year at February 1, 1926, and August 1, 1926, being a total of 10% on the money invested for the year, and in addition to the said 10% which is guaranteed to the said Hans Jensen, he shall obtain at the end of the year, or August 1st, an additional sum which shall be such sum as will make one-tenth of the profits of the said firm for the year ending August 1, 1926, up to the amount of 20% of his investment, but no more.

"It is further agreed that this agreement may continue at the option of the parties hereto or be extended by mutual agreement of all parties concerned.

"Romigh and Heffner, by J. V. Romigh
"Hans Jensen"

This agreement was later extended by mutual consent for a second year, and the first consideration perhaps relates to the rights of the parties at the end of the second year when by its terms and by the extension agreement the contract terminated.

Plaintiff lays considerable stress upon the unequal position of the plaintiff and the defendants, and preliminary to a discussion of the meaning of exhibit 19, it is proper to mention that the plaintiff was born in 1883 and quit school after reaching the fifth grade. He is of Danish extraction, but was born in Dodge county, Nebraska. Prior to entering defendants' employment in May, 1925, he was a farmer and his job around defendants' garage was washing cars, making minor repairs and running errands. The defend-

ant Romigh, on the other hand, who carried on the business with Mr. Jensen for his firm, was a graduate lawyer of Nebraska and Harvard Universities, had practiced law and was an experienced business man.

Now coming to a consideration of the rights of the parties at the expiration of the time fixed by exhibit 19 and the extension agreement, we find no place where the law fixes the rights of limited partners as between themselves. Section 67-104 and the following sections of chapter 67, Comp. St. 1929, lay down various rules with reference to limited partnerships, but in our judgment these are for the protection of third parties, and in any event they do not set forth the rights of the parties on a termination of such partnerships. Is exhibit 19 open to the construction that on the termination thereof there was to be an accounting and that the plaintiff was to receive some definite share in the property of the partnership? If the total net assets of the partnership on such an accounting turned out to be say $20,000, would he have an interest above his $5,000 therein? Defendants would be the last to so contend. On the other hand, if the total assets turned out to be $10,000, would he simply get one-third thereof? There is nothing in the agreement that so provides. The agreement does not specify the interest of the partners nor how much they had invested in the partnership. The part of the agreement which says that plaintiff "shall become a limited partner of said firm" is, it seems to us, entirely meaningless except in connection with that part of the agreement which says that, in addition to 10 per cent. of his money, he shall receive "an additional sum which shall be such sum as will make one-tenth of the profits of the said firm for the year ending August 1, 1926, up to the amount of 20% of his investment, but no more." It seems to us that a fair construction of this instrument is that plaintiff loaned the partnership $5,000 at 10 per cent.; that up to the time the agreement was terminated he was, in addition to his 10 per cent.; entitled to share in the profits of the concern; that upon the termination of his agreement

he was entitled to recover from the firm the $5,000 he had put in; that he was a limited partner only to the extent set forth in the instrument, namely, for one year (later extended to two years) and in the profits as stated in the agreement made during said two years; that after the expiration of the two years defendants simply held his money as borrowers. If this meaning is not given to exhibit 19, it at least must be conceded that its meaning is vague or ambiguous and therefore open to explanation by other evidence. It provides for the termination of the relationship existing between plaintiff and defendants without stating the rights of the parties on such termination and without reciting any facts from which the rights of the parties could be determined. The agreement being silent as to these points, its meaning is ambiguous and the interpretation placed upon it by the parties should govern.

"The practical interpretation given their contracts by the parties to them while they are engaged in the performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and the courts will ordinarily enforce such construction." *Cady v. Travelers Ins. Co.*, 93 Neb. 634, 142 N. W. 107. See *City of Scottsbluff v. Western Public Service Co.*, 127 Neb. 160, 254 N. W. 712; *Petersen v. City of Omaha*, 120 Neb. 219, 231 N. W. 763; *Edwards v. Hastings Distributing Co.*, 107 Neb. 621, 186 N. W. 980.

Plaintiff offered to prove by Mr. Jensen, who was on the witness-stand, "that on the morning of July 28, 1925, at the place of business of the defendants, Romigh and Heffner, in the city of North Platte, Nebraska, the defendant Romigh presented to the plaintiff, Jensen, this exhibit 19, that the plaintiff read it through and then said to Mr. Romigh before it was signed: 'What about paying the five thousand dollars back? It was understood between us that this was to be paid in one year. Does that paper in there show that this money is to be paid back to me in one year?' And that Mr. Romigh then read the part of the agreement which said: 'It is hereby agreed that this agreement shall

run one year from August 1, 1925, and shall terminate August 1, 1926.' Mr. Romigh said to Mr. Jensen: 'When that says that shall terminate August 1, 1926, that means, that we are to pay you back your five thousand dollars on that date.' " This was excluded by the court and was assigned as error.

Mr. Jensen was leaving for California a short time after the end of the first year, that is, about August 5, 1926. Plaintiff offered to prove by Mr. Fred Kugler that "the witness and Hans Jensen were in town together, about ready to start for California, and that he overheard a part of the conversation between the plaintiff, Jensen, and the defendant Romigh, and he heard Mr. Jensen ask Mr. Romigh for his money that he had loaned to him, and that Mr. Romigh said that it was too short notice, that he would have to have a little time in order to get the money to pay him." This proffered evidence was also rejected by the court and error in the ruling is assigned by plaintiff.

In our judgment this evidence should have been admitted, since it bears on the meaning of the contract with regard to a matter about which the contract is silent, or at least uncertain. It is evidence of the construction the parties themselves placed upon this agreement.

The court did admit the letters written by Mr. Romigh and these letters in our judgment were ample to carry the case to the jury on the proposition that the transaction was a loan. Quotations from the letters showing the date of each are here given, to wit:

"Sept. 30, 1926. * * * We finally got the profits figured up for the year and it made a little over 16%, which makes your interest and profit on the $5,000 amount to $804. I am inclosing a check for this amount to you. * * *

"This investment of yours has been pretty good for this year and hope that you will be able to extend it for another year, as the chances are it will do better next year."

"Dec. 8, 1926. * * * I am inclosing check for the first quarter's interest, being $125, and hope that we can again have a better year for next year. * * *

"I accept your proposition in regard to the agreement last year, and will extend it for another year as you agreed in your letter."

"May 16, 1927. * * * I am inclosing check for $250, which makes the interest for six months and pays up to the first of this month."

"Sept. 14, 1927. * * * We went pretty far in the hole this spring and are gradually coming out of it and I think that we will be able to get you some money by December all right, at least $1,000 and maybe more."

"Nov. 21, 1927. * * * I am inclosing our check for $250, which will at least take care of the interest on your investment for the six months following August 1st, and pay this up to Febr. 1st, 1928. * * *

"I am sending you this interest now and hope that I will be able to send you some more money in December, but things will have to improve if we do."

"Dec. 3, 1927. * * * I am inclosing you another check for $250 on account and think I will be able to send you another check of the same amount in the next week or 10 days."

"April 23, 1928. * * * I am inclosing check for $250 as requested and am glad that I can report that things are much better here this spring."

"July 30, 1928. * * * I am sending you check for $225 for interest up to August 1st, as the investment is now down to $4,500."

"February 15, 1929. * * * I am inclosing herewith check for $225 which will pay interest in advance to August 1, 1929."

"August 17, 1929. * * * I inclose check for $225 as your share on minimum basis on the past six months' profits."

"March 13, 1930. * * * I am inclosing check for $50 which is all we can spare now, but next month there ought to be a revival and we can send you some more."

"July 23, 1930. * * * If conditions would get a little better, there might be something left for the partners, but we cannot tell now, as business is so bad that it is hard to sell anything. * * *

"After all the accounts are paid, there may be something left for you, Earl, Charlie and I, but no one can tell now."

It will be noticed from these letters that the first time after the expiration of the two years that Mr. Romigh refers to the transaction as anything but a loan is in the letter of August 17, 1929. In so far as we can see the idea never occurred to defendants prior to that time but that they owed plaintiff the balance of his investment. Plaintiff served notice on defendants to produce the various letters sent to them by Mr. Jensen. They produced only two letters, which were offered by plaintiff but excluded by the court. They should have been admitted. Plaintiff says in his letter of November 19, 1926: "I will loan you the $5,000 for another year on the same term and same kind of contract and you can send me the interest that will be due by the first Dec." In another letter dated November 14, 1927, plaintiff writes: "When you send me the money my address is (followed by his address)."

After laying the proper foundation plaintiff offered to prove the contents of other letters he sent to defendant Romigh referring to the transaction. These are part of the correspondence between plaintiff and defendant Romigh during the time that plaintiff was living in California. In one of these letters plaintiff requested the defendants to pay him $2,000. This is the letter to which defendants' letter of September 14, 1927, is a reply in which he says: "I think we will be able to get you some money by December all right, at least $1,000, and maybe more." Plaintiff should have been permitted to prove the contents of these letters. They throw light on the transaction, would have made the letters written by defendants more understandable, and they are part of the correspondence, part of which had already been admitted. Comp. St. 1929, sec. 20-1215. They can hardly be said to be self-serving since the defendants apparently acquiesced in regarding the transaction a loan which they intended to repay. They show plaintiff's understanding of the agreement.

"When the terms of an agreement have been intended

in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Comp. St. 1929, sec. 20-1217. See *Davis v. Highway Motor Underwriters*, 120 Neb. 734, 235 N. W. 325; *Flory v. Supreme Tribe of Ben Hur*, 98 Neb. 160, 152 N. W. 295.

Defendants further contend that because the business was carried on by the defendant Romigh the principle announced by the court in *Mayberry v. Willoughby*, 5 Neb. 368, and followed in the later case of *Hall v. Rogers*, 113 Neb. 290, 202 N. W. 908, applies, and that the payment by Romigh does not toll the statute of limitations as to the defendant Heffner. The evidence shows however that the partnership though inactive actually had never been dissolved, that the payments by Romigh were with partnership money in which defendant Heffner had an equal interest with defendant Romigh. The principle announced in the two cases above referred to does not apply in a situation of this kind. 37 C. J. 1167.

Defendants plead that plaintiff assumed the role of a partner after the agreement of July 28, 1925, but the evidence does not support this plea. He continued doing common work exactly as before. One evening after the partners had gone home he wrote a check to make change, but before doing so he called up Mr. Romigh and got his consent and he signed the check "J. V. Romigh by Hans Jensen." There is no other evidence to support the plea that Jensen assumed the role of a partner.

REVERSED AND REMANDED.