DAKOTA COUNTY, APPELLEE, v. CENTRAL BRIDGE & CONSTRUCTION COMPANY ET AL., APPELLEES: FIRST NATIONAL BANK OF WAHOO, APPELLANT: UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE.

285 N. W. 309

FILED APRIL 7, 1939. No. 30503.

*Paul F. Good* and *Hendricks & Kokjer,* for appellant.

*Malcolm R. Smith, W. P. Warner, Abbott, Dunlap & Abbott, Fred H. Richards, Jr., George W. Leamer, Young*

& *Williams, Clarence T. Spier, Crossman & Barton* and *Munger & Rhodes, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is an action involving the problem as to whom Dakota county shall pay certain sums it owes for the repair and construction of bridges in that county. The dispute is between the materialmen who claim an equitable lien, the assignee of the contractor, and the contractor's surety. The trial court held that the materialmen had an equitable lien superior to that of the assignee and the bonding company. The assignee and the bonding company appeal.

The case arises out of the following set of facts. On May 26, 1936, Dakota county, hereinafter referred to as the county, entered into a contract with the Central Bridge & Construction Company, hereinafter referred to as the construction company, and one Byron O. Dorn, for such bridge work and bridge materials as the county might require during the following year. The United States Fidelity & Guaranty Company, hereinafter referred to as the surety company, gave the bond required by statute in the sum of $1,000 conditioned upon the faithful performance of the contract by the construction company. No bond was given by Dorn.

The contract is on the same form as that used in the case of *Fremont Foundry & Machine Co. v. Saunders County, ante,* p. 101, 285 N. W. 115. Reference herein will be made to that case as the Saunders county case.

Under the contract a total of about $23,000 worth of work was done, partly by Dorn, and partly by the construction company. Individual claims were filed by Dorn and by the construction company. The construction company was paid some of its claims, and those paid claims, as well as the claims of Dorn, are not involved in this litigation.

This action involves the proceeds of three claims totaling $12,657.40, filed by the construction company, for repairs

to one bridge and the construction of two new bridges. The work was completed, inspected, and accepted by the county board. Claims therefor were filed December 24, 1936, and January 6, 1937. The claims were audited and approved, but, with one exception, do not appear to have been formally allowed by the county board. The county commissioners in writing advised the construction company that these claims had been presented to the county clerk for payment, and the county clerk likewise certified to the construction company that warrants would issue as soon as funds were available. Copies of the claims, together with the statement of the county commissioners and the county clerk, were presented to the First National Bank, of Wahoo, hereinafter referred to as the bank, and on January 16, 1937, were assigned to and purchased by the bank at face value less a discount for interest.

The county clerk of Dakota county was notified of the assignments, and he asked for the filing of the original assignments. On February 11, 1937, the county clerk acknowledged receipt of the original assignments, and advised the bank that the assignments were subject to an indebtedness of the construction company to Dakota county in the sum of $500.

On February 19, 1937, a representative of the Omaha Steel Works, one of the defendants herein, advised the county of the insolvency of the construction company, and on that date the county commissioners allowed one of the claims, less the $500 deduction, and refused to issue warrants for any of the claims in view of the dispute as to the disposition of the proceeds. Subsequently, three materialmen, who had furnished material to the construction company, brought suit against the county for the price of the material sold to the construction company. The county then brought this action in the district court for Dakota county, joining as parties defendant, the construction company, the bank, the surety company, and all of the materialmen; recited that it brought this action for the purpose of having a determination of all claims or liens of all the defendants

in and to the money due on said claims filed by the construction company, so that it and its officers would be properly protected in allowing claims and signing warrants for the same. The county prayed that the court determine the rights of each of the defendants in and to the money and each and every other matter necessary for a full and complete settlement of all the matters, and make the proper orders therefor.

The bank filed an objection to the jurisdiction of the court, which objection was overruled. The bank then answered, preserving its objections, set up its claim under the assignments, and alleged that it alone was entitled to the proceeds of said claims. The bank denied that any of the defendants had claims or rights superior to it, and claimed that the contract between the county and the construction company and Dorn was several, not joint.

The surety company claimed that the contract was joint, denied liability on its bond, and asked that, if it were found to be liable, it have the right of subrogation.

Dorn answered, claiming that, after the unpaid claims were paid, he was entitled to one-half of the amount remaining.

The other defendants answered, alleging the sale and delivery of materials, oil, and gas to the construction company, and that they had not been paid; claimed that the assignments were null and void; and asked that each be decreed to have an equitable lien upon the balance due under the contract superior to the rights of the bank.

The construction company was adjudged bankrupt on March 9, 1937. Its trustee intervened in the action and prayed for judgment for the balance due after the payment of claims.

The case was tried in October, 1937, and was decided in April, 1938. The trial court found in favor of the defendants furnishing material, oil, and gas; determined the amount due from the county was $12,157.40, that materialmen had been unpaid in the sum of $6,271.51, that each of said defendants had a lien upon the balance due under the

contract prior to the claim of the bank, that there was due from the surety company $1,000 on its bond, but that, if it were required to pay said sum, it should be subrogated to that extent, and that the balance due under the contract should be paid to the bank; and so decreed.

A part of the items involved in the materialmen's claims did not enter into the construction work for which these three claims were filed, but were for materials sold to the construction company in the performance of other orders under the contract with Dakota county.

The special appearance of the bank is predicated upon the proposition that the court is without jurisdiction of the subject-matter of the action because the allowance or disallowance of claims against the county is a matter within the jurisdiction of the county board. Such is not the issue. The amount due on the claims is not in dispute. The matter which is involved is to whom the money should be paid. While the county does not specifically tender the money into court, its declared purpose in bringing the suit, as well as its prayer, is sufficiently broad to cover an avowed purpose to abide by the decree of the court as to the payment of these funds.

The procedure followed by the county in this case has been repeatedly followed under similar circumstances in this state. Without further discussion or citation of authority, we hold that the district court did not err in overruling the special appearance.

The claims of the defendant materialmen for equitable liens in this case rest on the same basis as the claims of the materialmen in the *Saunders County* case, *supra*. The legal status and the contractual provisions, so far as this question is concerned, are the same. The decision in that case is controlling of this issue in the case at bar. The materialmen do not have an equitable lien upon the debt owing by Dakota county to the construction company.

Next is the question of the right of priority to the payment of the amounts due on these claims as between the bank and the surety company.

The contract is on a printed form prepared by an agency of the state. It is signed by the construction company and by Byron O. Dorn. It contains four pages of schedules of unit prices.

The first page of the contract contains the "Proposal." While using the pronoun "we" with reference to the party making the proposal, and "you" with reference to the board of county commissioners, it provides a place for the signature of the party making the proposal with lines for the firm name, the name of the individual signing for the firm, and his title. This part of the form clearly contemplates a proposal by a single contractor, not two or more.

The contract in the printed form (both in the opening paragraph and in the lines prepared for signatures) provides for a "party of the first part" and a *"party* of the second part." The singular "party" is used in the various covenants of the contract, including the agreement to give a bond. The plural is used only when reference is made to both the party of the first part and the party of the second part. The proposal and the contract, however, are signed by both the construction company and Byron O. Dorn. Obviously, the contract form was prepared for use in the case of one contractor agreeing to do certain work for one public-contracting body.

Dorn contends that it is a joint contract, and for that reason and because he did not join in the assignments, that the assignments of the construction company to the bank are void; and that, after the materialmen are paid, he is entitled to receive one-half of the proceeds of the debts due the construction company.

The surety company contends that it is a joint contract; that it signed as surety for the construction company without knowing that it was a joint contract, and that, because it is a joint contract, their suretyship is void.

This court on a number of occasions has stated: "The practical interpretation given a contract by the parties to it while they are engaged in its performance, and before any controversy has arisen concerning it, is one of the

best indications of its true intent, and the courts will ordinarily enforce such construction." *Jensen v. Romigh,* 133 Neb. 71, 274 N. W. 199.

The reason for this rule is well explained in 12 American Jurisprudence, p. 787, as follows: "In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms. In fact the courts will generally follow such practical interpretation of a doubtful contract. It is to be assumed that parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical interpretation reflects that meaning than when subsequent differences have impelled them to resort to law and one of them then seeks an interpretation at variance with their practical interpretation of its provisions. Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the purview of the constructions permitted as possible by such language, the court will ordinarily follow such adopted construction as the correct one."

The contract, in and of itself, is an obligation for the period of one year on the part of the contractor to do certain work at certain unit prices as the county "may require." The county is not obligated to purchase either materials or services. Such bridges, bridge work, or bridge materials as ordered by the county were required to be furnished and completed within sixty days from the date of the order. As to its performance, it is clearly a severable contract.

Is it joint or several as to the parties? The contract itself is neither clear nor certain as to that proposition. For the answer, we must look to the construction which the parties placed upon it during the time that it was in force and before a controversy arose. The minutes of the county board for May 26, 1936, recite that a motion was made and carried "that the bid of the Central Bridge & Construction Company and Byron O. Dorn be accepted as being the best bid;" also, that "said companies were directed to file bond as required by law." The county at different times called upon Mr. Dorn to do certain work under the contract, and on those occasions Mr. Dorn alone was notified. He did the work, filed individual claims for payment, and warrants were issued to him personally. He made no accounting to, or division with, the construction company of any funds received by him in payment for work done under the contract. The same procedure was followed when at different times the construction company was called upon to perform work under the contract. Claims were filed, warrants issued, payment made to the construction company, and no accounting made by the construction company to Dorn. In all, some $10,000 worth of work was done by the construction company and by Dorn, on individual orders, individual performance, and individual payments.

The three claims, the proceeds of which are in dispute in this matter, are for work done by the construction company at the request of the county upon notice to the construction company, and with all of which Dorn had no part. That the parties themselves considered it a several contract, both as to the parties and performance, is clear from the interpretation which the parties themselves placed upon it.

This interpretation of the contract is likewise supported by the fact that all the materialmen, parties to this matter, entered into their agreements with the construction company, charged the items of their accounts to the construction company, and proved their claims in part by the construction company's employees.

That the surety company so interpreted the contract is indicated by the fact that the bond signed by the surety company recites that the construction company "has been awarded a contract by the county for yearly bridge work." No reference to Dorn is made.

We therefore hold that the contract was several as to parties and performance, and that Dorn has no interest in the proceeds of the claims in controversy in this action.

Under this interpretation of the contract, the surety company is liable to the extent of its bond because of the failure of the construction company to pay for materials furnished.

Does the surety company have a lien upon said funds superior to the rights of the bank? The bank claims to be a holder without notice of any equities or claims of the surety company. The surety company plead and proved that, to indemnify it against loss, in the application for the bond there was an assignment to it of the rights of the construction company under the contract. The bank claims that it was without knowledge of the assignment when it purchased the claims of the construction company.

We analyzed the case of *First Nat. Bank v. Pesha,* 99 Neb. 785, 157 N. W. 924, in the *Saunders County* case, *supra.* That analysis will not be repeated here. So far as the relative rights of the assignee and the surety are concerned, the *Pesha* case and the instant case are almost identical. In the *Pesha* case, this court held that the bond "became an essential part of the contract." The claims held by the bank are based upon work done under the contract. The rights of the bank necessarily rest upon the provisions of the contract, *including the bond.*

The holding in the *Pesha* case was that the surety had a prior claim on the funds because, *by the terms of its bond,* it had assumed obligation to make certain payments, that obligation related back to the date of its entering into the obligation under its bond, and the surety company had a prior obligation, and, therefore, a right prior to the assignee.

The question of the assignment in the application and of the bank's knowledge of it is immaterial to a decision of the question here.

This court in the case of *First Nat. Bank of Madison v. School District*, 77 Neb. 570, 110 N. W. 349, had before it a case similar to the one at bar, and there held that the rights of the assignee of the defaulting contractor were junior to the rights of the surety company.

The stronger equities in this case are distinctly with the surety company. The materialmen have the right to look to the bond of the surety company for payment to the extent that such bond obligates the surety company to pay for material. The surety company had undertaken to pay those materialmen to that extent. It had not undertaken to pay the bank or any other assignee of the contractor. The condition of the bond was that the construction company would pay off and settle in full all accounts and claims that "may become due for materials furnished or services rendered," and that, if it failed to do so, the surety company would perform to the extent of $1,000. That there has been a breach of the construction company of that part of the contract is obvious from the record.

The decision in the *Pesha* case is controlling in the determination of the question of the relative rights of the bank and the surety company. The surety company has the prior right to the extent of its obligation under the bond.

The decree of the trial court is reversed, and the case remanded with instructions to enter a decree:

(1) Denying the claims of the materialmen for liens upon the fund, and denying payment out of the fund to them by the county;

(2) Providing that the surety company has a lien upon the funds represented by the claims involved in this action to the amount of $1,000, but no more, and directing that the surety company shall pay said sum of $1,000 *pro rata* to the materialmen entitled thereto under the provisions of said bond, and upon the surety company's making its show-

ing to the county that it has complied with the provisions of the decree and met its obligations under the bond, that the county be ordered to issue its warrant upon the proper funds of said county for the payment of said sum of $1,000 to the said surety company;

(3) Providing for the payment of the balance of the obligation due originally to the construction company for work performed under said contract to the bank as assignee thereof, and that the defendant county be ordered to draw its warrant upon the proper funds of the county payable to the bank for said balance.

REVERSED.