CONSUMERS COOPERATIVE ASSOCIATION, A CORPORATION, APPELLEE, v. HENRY SHERMAN ET AL., APPELLANTS.

25 N. W. 2d 548

FILED JANUARY 3, 1947. No. 32140.

*Neighbors & Danielson,* for appellants.

*Mothersead & Wright* and *Lewis F. Shull,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ. and WILSON, District Judge.

WENKE, J.

This action was commenced in the district court for Scotts Bluff County by Consumers Cooperative Association, a corporation, against Henry Sherman and Edwin Sherman, doing business as Sherman Brothers and as Sherman Food Processing Company.

The purpose of the suit was to recover damages for breach of a contract.

From a verdict and judgment thereon in favor of the plaintiff, motion for new trial having been overruled, the defendants appeal.

For convenience the appellants will be referred to as the defendants and the appellee as plaintiff.

There were two jury trials of this case in the district court. The first trial resulted in a verdict for the plaintiff in the sum of $453.52. Thereafter the court, upon application of the plaintiff, granted a new trial. At the second trial

the jury returned a verdict in favor of the plaintiff for $3,775.54. From a judgment entered thereon, their motion for new trial having been overruled, the defendants appeal.

The defendants assign as error the setting aside of the first verdict; the sustaining of objections to their evidence offered to show that under the contract like cartons could be returned that were usable for the same purpose; the court's refusal to give defendants' requested instructions numbered two, three, and four; and that the verdict is not responsive to the evidence. The foregoing instructions numbered two, three, and four refer to the same issue as the evidence offered on use and if the objections thereto were properly sustained then the refusal to give the instructions was likewise correct.

The parties, by their pleadings, admit that the plaintiff is a corporation engaged in the canning business in Scottsbluff, Nebraska, and that the defendants are located at Sioux City, Iowa, doing business as Sherman Brothers and Sherman Food Processing Company.

Plaintiff offered evidence to show that on or about April 27, 1944, pursuant to an oral agreement hereafter more specifically referred to and set out, it shipped by freight to the defendants at Sioux City, Iowa, a car containing 19,935 V-1 solid fibre cartons; that thereafter, pursuant to the provisions of the agreement, it asked for a return of the cartons; that on July 20, 1944, the defendants returned 250 V-1 cartons; that thereafter on October 11, 1944, the defendants delivered to the plaintiff 18,150 V-3C cartons; that a V-1 carton is of solid fibre with an average bursting strength per square inch of 750 pounds when dry and 500 pounds when wet with a market value of $36.10 to $36.18 per hundred; that a V-3C is a much lighter carton of corrugated fibre with a bursting strength of 400 pounds when dry and 150 pounds when wet with a market value of $18.32 to $18.50 per hundred; that a V-1 carton has greater water resisting qualities and is more moisture proof; that the reasonable charge for loading the V-1 cartons in the car was $50; for unloading the car of V-3C cartons was $45

and express paid on the 20 bundles of V-1 cartons returned was $42.25.

The defendants admit receiving the car of V-1 cartons sent by the plaintiff but testified it contained only 19,020 V-1 cartons when received; that they returned 300 V-1 cartons; that they delivered to the plaintiff 18,147 V-3C cartons and admit owing for 573 V-1 cartons; that V-1 cartons had a market value of $336 per thousand; and that they had paid for loading the car of V-1 cartons.

At the first trial the defendants, over objections made by plaintiff, were permitted to introduce evidence to show that the V-3C cartons delivered to plaintiff were suitable and could be used for the same purpose as the cartons which they received from the plaintiff and therefore had the same use value. At the second trial the plaintiff's objections thereto were sustained and the evidence was excluded. The ruling on this evidence is the principal question here involved for if this evidence should not have been admitted at the first trial then the amount of damages allowed by the jury was clearly inadequate. As stated in Preston v. Farmers Irrigation District, 134 Neb. 503, 279 N. W. 298: "When the amount of damages allowed by a jury is clearly inadequate, under the evidence in the case, it is error for the trial court to refuse to set aside such verdict."

In its petition the plaintiff alleged that on or about April 27, 1944, it sold and delivered to the defendants 19,935 V-1 cartons, being wooden cartons for the packing of dehydrated food for shipment to the army; that the defendants agreed to pay for said cartons by returning, upon demand, a like number of the same kind of cartons and to pay the cost of loading for shipment to the defendants and the cost of unloading the cartons on return and pay all transportation costs; that on July 20, 1944, it made demand for a return of said cartons and that defendants returned 250 V-1 cartons on which they failed to pay the express charges of $42.25; that on or about October 11, 1944, the defendants delivered 18,150 V-3C cartons which were of less value than V-1 cartons; that by reason of defendants' refusal to

return a like amount of cartons delivered to them and to pay the costs of loading and unloading the said cartons, the plaintiff was damaged to the extent of $3,934.20 and prayed judgment therefor.

Defendants answered admitting having received from plaintiff 19,020 V-1 cartons for the packing of dehydrated foods for shipment to the army and allege that they agreed to return to plaintiff upon demand a like number of cartons suitable for shipment of dehydrated food to the army; admit having returned 18,147 V-3 cartons and claim they returned 300 V-1 cartons and admit owing for 573 cartons for which they offer to pay; that the cartons returned were suitable for the purposes for which plaintiff contemplated using said cartons and the cartons so returned were each of a value equal to the cartons received; tendered $300 in full payment of all claims and demands and ask that the plaintiff's action be dismissed.

Plaintiff filed a reply denying these allegations.

While these pleadings put in issue the question of the number of cartons originally delivered to the defendants and the number returned, also, the question of the costs of loading and unloading together with the express charges, however, the principal question is the nature of the contract itself. Plaintiff alleges that on demand the defendant "agreed to pay for said cartons by returning upon demand * * * a like number of the same kind of cartons * * *"; whereas, the defendants allege that they "agree to return * * * upon demand a like number of cartons suitable for shipment of dehydrated foods to the army, * * *."

At the first trial Orville D. Marquardt, the general manager of plaintiff and who carried on the negotiations for it with the defendant, Henry Sherman, testified thereto as follows: "* * * he asked me to sell him these cartons, and at that time I said we wouldn't sell him them because we didn't know whether we would receive another contract or not, but we would do this: That we would ship him the carload of cartons and if we received a new contract he was to return the like cartons and if we did not receive a contract

\* \* \* we would invoice him for the cartons and he would pay us for them, and he \* \* \* then made his own suggestion that he would be willing to pay for the loading and the unloading of those cartons."

At the first trial the defendant, Henry Sherman, who carried on the negotiations for the defendants, testified as follows: "\* \* \* I asked him if he had any cartons he wouldn't need or if he had an oversupply and he told me that he did have; that he didn't know how many he had, but they were shut down and would not need the cartons he had, and I asked him if I could send our truck and get a truckload of them, and he said he would rather not do that; he would rather get rid of all the cartons because at that moment they had no need for them. However, were they able to obtain another contract later on they would want the cartons returned, and if they didn't obtain a contract we could pay for them."

On the second trial Marquardt testified as follows: "I told him that we had—it was over 19,000 because I looked at our inventory and it was around 21,000 and some V-1 fibre cartons, and he wanted to buy these cartons and so I told him at that time that since the carton situation was very critical and we were anticipating getting another contract with the government, although we didn't have it at the present time, we didn't like to sell the cartons, but he said he needed the cartons badly, and so we agreed that we would ship him the car of V-1 solid fibre cartons, and if something happened that we didn't get another contract with the government then we would invoice him at the invoice price of the cartons and he would pay us; if we got a new contract he was to return us like cartons, \* \* \* He said that would be fine. Then he made his own statement that he was willing to pay for the labor that it took to load and unload the cartons, also he stated that he would be glad to pay the freight."

On the second trial Henry Sherman testified as follows: "Well, he said he had, he thought, about 20,000 cartons which they had no need for because they had no govern-

ment contract at that time and didn't know if they would have need for them in the future, and would be glad to let me have all of them as he didn't want to have part of them around his warehouse. * * * Well, I agreed to take the carload of cartons and were to return them if they obtained another government contract, or pay for them if they didn't."

On his cross-examination at the first trial Henry Sherman testified that no discussion was had as to the kind of cartons that were to be returned. This is understandable for as he testified on direct, "they would want *the cartons returned*," and as Marquardt stated, he told him "he was to return *the like cartons*." From this evidence it is clear that the agreement was that the defendant was, on demand, to return *the or like cartons*. (Italics ours.)

This contract is definite and clear and required the defendants to return the or like cartons upon plaintiff's demand. Thereunder the defendants cannot require plaintiff to accept other and different cartons of inferior or less quality although usable for the same purpose unless the plaintiff agrees to accept such in place thereof, and no such agreement is shown. The objections to this evidence was properly sustained and the refusal to give the requested instructions was correct.

The defendants offered in evidence a copy of a letter addressed to plaintiff dated September 8, 1944. Therein they advised plaintiff they were placing an order for immediate shipment to it of 18,720 V-3 shipping containers and asked: "Would suggest that you immediately send us printing specifications for the cartons so that there will be no delay in shipment of this order." They then offered the plaintiff's reply which sets forth the information as to printing specifications. This was offered for the purpose of attempting to show the construction placed upon the contract by the parties themselves and to bring it within the following rule as stated in Dakota County v. Central Bridge & Construction Co., 136 Neb. 118, 285 N. W. 309, which is: " 'The practical interpretation given a contract by the parties to it while they are engaged in its performance, and before any

controversy has arisen concerning it, is one of the best indications of its true intent, and the courts will ordinarily enforce such construction.' Jensen v. Romigh, 133 Neb. 71, 274 N. W. 199."

However, this rule is not applicable. As already set forth the contract was definite and certain and the plaintiff was entitled to have it enforced according to its terms. As stated in Dakota County v. Central Bridge & Construction Co., *supra*: "The reason for this rule is well explained in 12 American Jurisprudence, p. 787, as follows: 'In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is to be considered by the court and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms. In fact the courts will generally follow such practical interpretation of a doubtful contract. * * * Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the purview of the constructions permitted as possible by such language, the court will ordinarily follow such adopted construction as the correct one.' "

It can also be said that there is nothing in these communications or in the conduct of the parties in relation thereto that in any manner reflects a construction other than that which the plaintiff is here seeking to enforce.

The basis of the plaintiff's right to recover was submitted to the jury by the following instruction: "You are instructed that your verdict in this case must be for the plaintiff and the amount of the verdict must be the difference between the value of the cartons furnished by the plaintiff to the defendant and the value of the cartons returned by the defendant to the plaintiff plus the reasonable cost of loading and unloading said cartons by the plaintiff and any express charges shown to have been paid on any of said cartons by the plaintiff. To the amount so found by you, should be added interest at the rate of 6% per annum from October 11, 1944, to this date."

The basis of plaintiff's right to recovery is stated in 25 C. J. S., Damages, § 79, p. 586, as follows: "The measure of damages for breach of a contract * * *, where the contract is to pay specific property, * * * is the value of the property at the time of the breach." Also, as stated in 15 Am. Jur., Damages, § 59, p. 464, as follows: "If the agreement is to pay a sum of money in specific property at all events, as distinguished from a sum of money in property, the measure of damages is the value of the property when payment is due." This same principle is announced in Knoechelmann's Administrator v. Knoechelmann, 242 Ky. 662, 47 S. W. 2d 534, as follows: "When obligation is to be discharged by transfer of specific property which has been placed beyond reach of parties, of (or) process of court, value of property at time of breach may be recovered." Of course, as in the instruction provided, from this must be deducted the value of the property returned by the defendants.

The application of this rule is clearly set out in one of the instructions offered by defendants by the following language: "If you find that the defendants agreed to return to plaintiff a like number of V-1 cartons, or the same kind of cartons plaintiff delivered to the defendants, then you should determine the difference in value between the cartons plaintiff delivered to defendants and the cartons defendants returned to plaintiff."

Under this instruction, as given by the court, the verdict of the jury finds ample support in the evidence which has already been sufficiently set forth.

For the reasons stated we find the verdict and judgment of the lower court to be correct and the same is affirmed.

AFFIRMED.